**Dominick CODISPOTI Y-1353, Appellant,**

v.

**James F. HOWARD, Superintendent.**

**No. 77-2634.**

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit
Rule 12(6) Sept. 7, 1978.

Decided Dec. 8, 1978.

Dominick Codispoti, pro se.

Robert E. Colville, Dist. Atty., Michael J. Reilly, First Asst. Dist. Atty., Chris G. Copetas, Second Asst. Dist. Atty., Robert L. Eberhardt, Robert A. Zunich, Asst. Dist. Attys., Pittsburgh, Pa., for appellee.

Before ALDISERT and HIGGINBOTHAM, Circuit Judges, and STERN, District Judge.*

## OPINION

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

### I.

We are confronted here with the question of whether a federal court is powerless to review a petition for a federal writ of habeas corpus when a defendant has waited almost twelve years for the state trial court to rule on a motion for a new trial. The district court found that the petition is "premature"[1] because the petitioner "has failed to exhaust the remedies available to him in the courts of the Commonwealth," and dismissed the request for federal habeas corpus review. *Codispoti v. Howard,* No. 77–441, June 28, 1977.

In December 1966 Dominick Codispoti was found guilty of prison break and holding hostages in a penal institution. On the

---

* Herbert J. Stern, United States District Judge for the District of New Jersey, sitting by designation.

1. Magistrate's Report and Recommendation, June 3, 1977. The Magistrate's report was adopted and incorporated as part of the opinion of the district court.

day of his sentencing, December 12, 1966, he filed a motion for a new trial. To this date the Pennsylvania trial court has *never* ruled on the motion. Unless there is some exceptional circumstance, which we do not now perceive from the limited record in this case, the petitioner is entitled to a habeas corpus inquiry to determine whether, as Mr. Justice Holmes stated, "although every form may have been preserved" his substantive rights have been reduced to nothing "more than an empty shell." *Frank v. Mangum,* 237 U.S. 309, 346, 35 S.Ct. 582, 59 L.Ed. 969 (1915) (Holmes, J., dissenting). We will therefore reverse the dismissal of the petition and remand for further proceedings.

## II.

In December 1966 after a tumultuous jury trial, Dominick Codispoti and his two co-defendants, Richard Mayberry and Herbert Langnes, were found guilty of prison break and holding hostages in a penal institution. Before sentencing, Codispoti made a motion for a new trial on the grounds that his conviction was violative of both state law and the federal constitution.[2] Although under Pennsylvania law a new trial motion should be disposed of *prior* to sentencing,[3] the trial court failed to rule on Codispoti's motion. The judge gave each of the defendants a lengthy prison sentence; Codispoti received a fifteen to thirty year sentence. In addition, the trial judge found the defendants guilty of several counts of criminal contempt as a result of their conduct during the trial. While the state court did not act on the new trial motion, there was considerable activity on the contempt citations, including two appeals to the Supreme Court of the United States. See *Codispoti v. Pennsylvania,* 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974); *Mayberry v. Pennsylvania,* 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971).[4]

We are not unaware of the conduct of Codispoti and his co-defendants which precipitated the contempt citations. The transcript of the trial demonstrates that throughout the state trial the petitioner and his co-defendants conducted themselves in an unruly and disruptive manner. Indeed, the record indicates that the defendants' behavior was reprehensible. During the trial the judge was called "crazy," "a punk," "Caesar," "a dirty tyrannical old dog" and a "dirty sonofabitch." He was charged with "a tyrannical display of corruption," running a Spanish Inquisition and engaging in a conspiracy with the prison authorities. Langnes, one of the co-defendants, on at least two occasions threatened the trial judge that he would "blow off [his] head." Mr. Justice Douglas described the behavior of one of Codispoti's co-defendants "as a shock to those raised in the Western tradition that considers a courtroom a hallowed place of quiet dignity." *Mayberry v. Pennsylvania,* 400 U.S. at 456, 91 S.Ct. at 500. A similar comment might be appropriate in describing Codispoti's conduct, though the record reveals that his conduct

---

2. The new trial motion raised the following grounds:

    a) the verdict was contrary to the evidence; b) the verdict was contrary to the weight of the evidence; c) the verdict was contrary to the law; d) the improper introduction of defendants' prior criminal records to the jury via the local newspapers, during the trial and before the defendants ever took the stand in their own behalf; e) the prejudicial and inflammatory articles in the local newspapers prior to and during the trial; f) the court erred in failing to sustain the demurrer that defendants submitted at the close of the commonwealth's case; g) the court erred in refusing defendants' request of points for charge; h) the refusal of the court to interrogate the jury to determine whether or not it had became [sic] prejudiced against defendants as a result of the inflammatory and prejudicial news releases concerning defendants' arrest on Nov. 26, 1966, during the course of their trial; i) the refusal of the court to grant 8 peremptory challenges to each defendant.

3. See Rule 1123 Pennsylvania Rules of Criminal Procedure, Comment (Purdon Supp. 1978). See also *Commonwealth v. Haimbach,* 151 Pa. Super. 581, 30 A.2d 653 (1943).

4. On the contempt citations, Codispoti was initially found guilty of seven counts and sentenced to seven to fourteen years imprisonment. He was ultimately adjudged guilty of only one count.

was not quite as bizarre as his co-defendant's.

Yet at the outset it must be emphasized that the precious rights of due process and the writ of habeas corpus are not reserved solely for those who are polite and decorous. Indeed, the true test comes when these rights are to be guaranteed to a defendant regardless of how recalcitrant or vulgar his conduct may be.

As we noted above, Codispoti's attempts to obtain a review of his conviction for prison break and holding hostages began with a *pro se* motion for a new trial submitted to the trial court *prior to his sentencing* on December 12, 1966. Although almost twelve years have passed, the motion has not yet been disposed of by the state trial court. The court records suggest that while there was some initial activity, the motion has been dormant since 1967.[5] It is not denied by the respondent that the state court has not yet disposed of Codispoti's motion.

Our review of the court records provides no insight into the reason Codispoti's motion has never been acted on. United States Magistrate Robert Mitchell, whose report was adopted by the court below, suggested that there has been no ruling because Codispoti "apparently never pursued these matters and devoted his complete attention to his contempt convictions."[6]

Codispoti, on the other hand, asserted that he made several attempts to obtain a ruling on his motion. In this petition he alleged that he contacted the law schools of the City University of New York and Harvard University and the Pennsylvania Prison Research Council for assistance. He also alleged that he wrote to his trial counsel, the district attorney, and the trial judge on at least seven occasions between 1970 and 1973 in order to obtain a decision. Furthermore, Codispoti specifically averred:

> Both State Court Officials and Prison Officials have for the past Eleven years conspired to obstruct my right to appeal from my conviction. The trial court has ignored every effort I made to get a decision on my Motion for a New Trial. They have ignored all my correspondence up until last month [March, 1977]. The Prison Officials have destroyed and waylaid my petitions and legal letters. Judge Samuel Strauss had ordered a "FREEZE" on all my correspondence with the Trial Court and will not allow me to have any pertinent record that is needed for appeal.

In addition to his motion for a new trial, Codispoti made several other attempts to obtain review of his conviction. In June 1967 he filed a *pro se* petition requesting a Post-Conviction Hearing pursuant to Pennsylvania's Post-Conviction Hearing Act statute [PCHA]. Pa.Stat.Ann. tit. 19 §§ 1180–1 to 1180–14 (Purdon Supp.1978). This motion was denied on July 18, 1967 "for the reason that the issues raised in the petition are covered under a motion for new trial which is now pending." *Commonwealth v. Codispoti,* No. 4672 of 1965 (July 18, 1967).[7]

---

5. The most recent document in the file is dated October 26, 1967. It is an application by Codispoti's counsel requesting a continuance so that he might better prepare for oral arguments scheduled for November 1, 1967. The motion was denied in an order written on the end of the application.

Codispoti asserts that oral arguments were subsequently heard by the court on November 1, 1967. There is nothing in the file to confirm or contradict this assertion.

Attached as an exhibit to the habeas petition is a letter to Codispoti from the Allegheny County Clerk of Courts dated August 6, 1975, confirming that no disposition had been made of the new trial motion.

6. Magistrate Mitchell also explained that "in 1976 or early 1977, he filed a post-conviction petition attacking the conviction for prison break and holding hostage, and this matter is presently set for hearing. This is, therefore, not a case of a defendant being precluded from seeking his remedies in state court."

7. The averments of the two petitions were not identical. In addition to the challenges enumerated in his new trial motion, Codispoti's PCHA petition set forth allegations of police brutality, mistreatment by prison officials, and five different allegations focusing on his right to counsel and the denial of his fair trial and appellate rights.

In October 1976, almost ten years after the original trial, he filed a pro se petition for a writ of habeas corpus in federal district court alleging that the delay in processing his appeal violated his constitutional rights. This petition was dismissed on the ground that he had not exhausted his state remedies. *Codispoti v. Howard,* No. 76–1255 (W.D.Pa. October 8, 1976).

In October 1976 Codispoti submitted a second petition in the state court for a post-conviction hearing alleging that he had been unlawfully denied his appeal.[8]

In March 1977 he filed a civil complaint in federal court alleging that certain state officials had conspired to obstruct his attempts to appeal his conviction. This complaint was dismissed as to all but one of his claims.[9] *Codispoti v. Strauss,* No. 77–304 (W.D.Pa. March 18, 1977).

In April 1977 he filed pro se the petition for habeas corpus which is before us. In the petition he alleged that his right to appeal had been denied unlawfully and he requested that his federal claims for a new trial be considered by the district court.[10]

In June 1977 Judge Maurice Cohill dismissed the petition on the ground that Codispoti had failed to exhaust his state remedies.

In July 1977 a hearing on Codispoti's second PCHA petition was held. In August 1977 an order was entered reciting Codispoti's desire to withdraw his petition and dismissing the petition without prejudice.

Meanwhile, Codispoti appealed Judge Cohill's order to this court. In December 1977 Codispoti informed the court that he wished to represent himself and refused court-appointed counsel.

### III.

Under the federal habeas corpus statute federal courts have been granted the power to provide relief for state prisoners held in custody in violation of the federal constitution, treaties or laws.[11] These powers were broadly designed so that they might sweep aside procedural constraints, jurisdictional limitations and resistant courts and release a prisoner unjustly con-

---

8. Magistrate Mitchell noted that although Codispoti filed the petition in October 1976, "for some unexplained reason the petition was apparently marked 'received' by the Court of Common Pleas on March 16, 1977."

9. The court ordered the deputy superintendent of the prison to refrain from censoring and withholding Codispoti's mail.

10. The petitioner's brief raised the following issues:

a) Does the appellant have the right to contest the legality of his conviction by state court appellate review? b) Does appellant have the right to appeal to the federal court for a writ of habeas corpus when it is apparent that the state courts and state officials have been denying appellant the right to appeal from his conviction for the past eleven (11) years? c) Is it legal for the federal court to discharge appellant on the grounds that even if appellant were granted a new trial, he could not conduct a proper defense after 11½ years has elapsed since the alleged offense occurred and where it is shown that this lapse in time was caused by state officials who were obstructing appellant's right to appeal?

Codispoti did not list each of the errors he wished to raise as grounds for a new trial. However, he argued that the following errors were examples of the grounds for review:

a. The Trial Judge *terminated* the Defendant's case because of a legal argument between the Defendant and Trial Judge. b. The Trial Judge allowed the jury to deliberate upon the Defendant's case after several members of the jury blurted out threatening remarks to the Defendant. c. The Trial Judge denied Defendant vital and qualified witnesses. d. The District Attorney, Robert Duggin, wrote an "open" letter to the Newspapers saying that the Defendant was guilty. e. The Trial Judge ordered Defendant removed from the courtroom several times during the trial because of legal arguments between Defendant and Trial Judge and *allowing* the trial to proceed in Defendant's absence.

11. 28 U.S.C. § 2241 provides in pertinent part that:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.

\* \* \* \* \* \*

(c) The writ of habeas corpus shall not extend to a prisoner unless . . .

(3) He is in custody in violation of the Constitution or laws or treaties of the United States . . .

strained. As Justice Holmes eloquently stated:

> [H]abeas corpus cuts through all forms and goes to the very tissue of the structure. It comes in from the outside, not in subordination to the proceedings, and although every form may have been preserved, opens the inquiry whether they have been more than an empty shell.

*Frank v. Mangum,* 237 U.S. at 346, 35 S.Ct. at 595 (dissenting).[12]

■ While this power is plenary, the statute mandates a general rule of abstention which requires a petitioner to exhaust his state court remedies before resorting to the federal system.[13] This exhaustion requirement stems from considerations of comity and does not limit the jurisdictional power of the court to issue a writ. *Fay v. Noia,* 372 U.S. 391, 418, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

Instead it places a restraining hand on the federal courts and urges proper deference to the state system. Under the statute, a state judicial system has the first opportunity to correct its own errors, acting before the external authority of the federal court intervenes. *Id.* at 419–20, 83 S.Ct. 822. The Supreme Court has affirmed the importance of the abstention rule emphasizing that absent exceptional circumstances federal courts should stay their hands and permit the orderly functioning of the state appellate process. *Wilwording v. Swenson,* 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971).

■ Abstention, however, is not to be exercised in every instance. Indeed, the statute itself provides that when state remedies are ineffective in the protection of a prisoner's rights, a federal court may hear the petition.[14] Justice Rutledge observed

prior to the codification of the exhaustion doctrine in § 2254 that:

> it would be nothing less than abdication of our constitutional duty and function to rebuff petitioners with this mechanical formula [of failure to exhaust state remedies] whenever it may become clear that the alleged state remedy is nothing but a procedural morass offering no substantial hope of relief.

*Marino v. Ragen,* 332 U.S. 561, 564, 68 S.Ct. 240, 242, 92 L.Ed. 170 (1947) (Rutledge, J., concurring).

We must take issue with the view of habeas corpus law held by District Court Judge Cohill and Magistrate Mitchell. The Magistrate's report, which was adopted by the trial court, states that:

> "In the present case, although Codispoti filed post trial and post conviction motions immediately after his conviction, he apparently never pursued these matters and devoted his complete attention to his contempt convictions."

This "finding" is misleading and irrelevant. Codispoti is not in charge of scheduling the motions for disposition by the Pennsylvania trial courts—those are judicial managerial responsibilities. Moreover, it certainly was not inappropriate for Codispoti to "devote . . . his complete attention to his contempt convictions." Codispoti had received a sentence of seven to fourteen years of solitary confinement for these crimes. This sentence was to be served consecutive to his already outstanding sentence.

■ The district court refused to consider Codispoti's petition reasoning that he had failed to exhaust his state remedies. Bluntly, the trial court's ruling "is too narrow a view of the habeas corpus power" of the federal courts. *United States ex rel.*

---

**12.** The principles advanced by Justice Holmes were later adopted by the Supreme Court in *Moore v. Dempsey,* 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543 (1923). Justice Holmes wrote the majority opinion in *Moore.*

**13.** 28 U.S.C. § 2254 provides in pertinent part that:

(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant

to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

**14.** See footnote 13, *supra.*

*Johnson v. Cavell,* 468 F.2d 304, 309 (3d Cir. 1972). The petitioner has tried long enough to exhaust his remedies. We are not precluded from hearing his petition because of the exhaustion requirement for "[d]eference to an available state court remedy does not imply powerlessness to afford the petitioner a prompt hearing when by reason of delay the state process may prove to be ineffective to protect the rights of the prisoner." *Id.* at 309.

Petitioner Codispoti's application for habeas corpus relief outlines an exceptional history of delay and unresponsiveness on the part of the state court system. If his allegations are correct he has had no effective way to appeal his conviction. The trial court's delay in responding to his post-trial motions has stymied his appeal and barred judicial review. The normal process has been ineffective to provide review of his allegations that his trial was conducted unlawfully.

In our decision in *United States ex rel. Geisler v. Walters,* 510 F.2d 887 (3d Cir. 1975), we granted habeas corpus relief after a three year delay in disposing of a new trial motion. Similarly in *United States ex rel. Senk v. Brierley,* 471 F.2d 657 (3d Cir. 1973), we granted relief after a three and one-half year delay in disposing of a PCHA petition. Surely if a three year delay warrants federal court review, Codispoti's almost twelve year delay is a ground for review.

Moreover, consideration of Codispoti's petition would not conflict with the principles of comity underlying the exhaustion requirement. Exhaustion is "designed to give the State an initial 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Wilwording v. Swenson,* 404 U.S. at 250, 92 S.Ct. at 409, quoting *Fay v. Noia,* 372 U.S. at 438, 83 S.Ct. 822. The Pennsylvania courts have been given more than an ample "opportunity to pass upon" Codispoti's new trial motion.. They could and should have ruled when he first submitted his new trial motion and they were reminded of its pendency by his first PCHA petition. Further,

when the federal district court in 1976 abstained from deciding Codispoti's first habeas petition, the state courts should have ruled.

The respondent contends that Codispoti had an adequate remedy in his second PCHA petition and chose not to pursue it. It is argued that because he waived his right to an available state remedy he should be denied federal habeas relief notwithstanding the delay in his direct appeal. In support of this claim the respondent cites *Fay v. Noia, supra,* and *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). These cases do not justify dismissal of this petition.

■ The line of cases cited by the respondent deals only with the issue of the adequacy of an independent state law ground to bar federal habeas corpus review. In these cases the Court discussed the reviewability of federal claims which the state court declined to pass on because they were not presented in the manner prescribed by state procedural rules. *Id.* at 81–2, 97 S.Ct. 2497. The Court noted that if a procedural default barred state review, federal habeas review might also be barred. In the instant case Codispoti's withdrawal of his PCHA petition did not foreclose further state review. His claims may still be considered by the state court under his pending new trial motion. Therefore, his federal habeas corpus petition is not barred.

The respondent further asserts that the state courts are willing to review Codispoti's petition in a PCHA hearing and he argues that Codispoti should therefore be compelled to return to state courts. We do not agree.

■■ We have held that in the normal course of events a state prisoner who has completed the remedy of direct appeal, may request a federal writ of habeas corpus without first requesting a PCHA hearing. *United States ex rel. Schultz v. Brierley,* 449 F.2d 1286 (3d Cir. 1971). We have reasoned that once the state has "been afforded full opportunity to adjudicate the matter," the exhaustion requirement has

been met. *United States ex rel. Fletcher v. Maroney,* 413 F.2d 16, 18 (3d Cir. 1969). In this case Codispoti alleges that he has been unable to pursue a direct appeal due to the decade-long pendency of his post-trial motions. If the state has caused the delay, it would be anomalous to require him to pursue a post-trial motion which he would not normally have to consider, and which was once refused him. The state has "been afforded full opportunity" to review his conviction. We follow the guidance of the *Wilwording* court which stated:

> Petitioners are not required to file "repetitious applications" in the state courts. *Brown v. Allen,* 344 U.S. 443, 449 n. 3, 73 S.Ct. 397, 403, 97 L.Ed. 469 (1953). Nor does the mere possibility of success in additional proceedings bar federal relief. *Roberts v. LaVallee,* 389 U.S. 40, 42–43, 88 S.Ct. 194, 196–197, 19 L.Ed.2d 41 (1967).

404 U.S. at 250, 92 S.Ct. at 409.

■ As we have noted above, the record before us shows no valid explanation as to why the state court has waited almost twelve years to dispose of a post-trial motion. Presumptively such a delay should impel us to consider the prisoner's petition unless it can be shown that he has waived his appeal or some extraordinary occurrence has taken place.

We will therefore remand this case to the district court for an evidentiary hearing to determine why the petitioner's new trial motion has not been disposed of. The burden of proof at this hearing shall rest with the respondent, James Howard. We recommend that the evidentiary hearing be conducted by the trial court and not by the magistrate.

It is further ordered that if the trial court concludes that the delay is inexcusable, it should then determine whether there were errors committed at Codispoti's trial which were of a constitutional dimension. If there were constitutional violations, the court should further determine whether a

new trial should be held or whether due to the passage of time the charges must be dismissed.[15] Even if the court concludes that there were no constitutional violations at the original state trial, the court is free to consider whether the sheer length of the delay in deciding the new trial motion is a violation of Codispoti's constitutional rights.

We will accordingly reverse the judgment of the district court and remand this case for further proceedings not inconsistent with this opinion.

---

**15.** Instead of the above formulation Judge Aldisert would hold that the district court should determine whether the Pennsylvania courts can

afford Codispoti an opportunity to have his new trial motion heard and if necessary afford him an appeal to the state's appellate court.