James Harold JOHNSON

v.

Julius T. CUYLER, Supt., John J. Parker, Warden, Camden County Jail, N.J., The Attorney General of the State of Pennsylvania and New Jersey.

Civ. A. No. 80–4311.

United States District Court,
E. D. Pennsylvania.

March 1, 1982.

Thomas E. Butler, Jr., Philadelphia, Pa., for plaintiff.

Frank Neutze, Camden Asst. County Prosecutor, Camden, N. J., for State of N. J.

## MEMORANDUM AND ORDER

SHAPIRO, District Judge.

### INTRODUCTION

This case is presently before the court on a petition for a writ of *habeas corpus* filed by petitioner James H. Johnson. Petitioner challenges the validity of a New Jersey conviction entered against him on December 9, 1980. Petitioner contends that the speedy trial provisions of the Interstate Agreement on Detainers ("Agreement"), 42

Pa.C.S.A. § 9101, *et seq.* and N.J.S.A. 2A:159A–1 *et seq.*, were violated and therefore the New Jersey indictments should have been dismissed. This would be the case only if petitioner had made a valid timely request for transfer under Article III of the Agreement. Evidentiary hearings were held on this issue on July 20, 1981 and November 20, 1981. We deem it appropriate to make factual determinations for the reasons stated herein but deny the petition for failure to exhaust state remedies inasmuch as appellate proceedings are pending in the New Jersey state courts.

The following findings of fact are based upon the evidence presented and the stipulations of the parties.

### FINDINGS OF FACT

1. Petitioner was indicted on New Jersey charges in October, 1978 [1] and entered a plea of not guilty on October 26, 1978. The case was continued on November 20, 1978 at the request of the prosecutor. On December 27, 1978 petitioner was arrested in Philadelphia, Pennsylvania on charges unrelated to the New Jersey proceedings. At the next listing of the New Jersey case, on January 16, 1979, petitioner was being held in custody in Delaware County, Pennsylvania on a federal detainer for violation of probation (Stip. 1).

2. On January 18, 1979 petitioner was temporarily transferred to Philadelphia custody; on January 25, 1979 Sergeant Banks of the Camden County Fugitive Unit wrote to the Records Keeper of the Philadelphia Detention Center requesting that a detainer based on a New Jersey warrant, issued January 16, 1979, be lodged against petitioner (Stip. 2).

3. Petitioner was arraigned on the New Jersey detainer before The Hon. Abraham J. Gafni, Philadelphia Court of Common Pleas, on February 1, 1979. Petitioner then stated in court on the record his desire to be returned to New Jersey for disposition of

the New Jersey charges. The matter was continued and bail was set (Dkt.Ent.Muni. Ct.Phila., Ex. 8, p. 2).

4. Petitioner next appeared before Judge Gafni on February 6, 1979. Again he expressed a desire to have the New Jersey charges disposed of but the matter was continued because New Jersey Governor's warrants had not been received (Dkt.Ent. Muni.Ct.Phila., Ex. 8, p. 2).

5. Despite petitioner's statements in court that he wished to be returned to New Jersey for trial, the Philadelphia Police Department by letter dated February 7, 1979 (Exhibit 4), and the District Attorney's office, by letter dated February 26, 1979 (Exhibit 6), advised the Camden County prosecutor that petitioner refused to waive extradition.

6. On February 26, 1979 the Philadelphia District Attorney's office wrote to the Camden authorities that Governor's warrants should be received in Harrisburg by March 7 so that the petitioner might be afforded a hearing by April 7. On February 27, 1979 petitioner was not brought down for his extradition hearing and the matter was continued to February 28, 1979. The defendant was not brought down on February 28 because he was in the Delaware County Prison. On March 2, 1979 the matter was listed for status and continued until March 27, 1979 because no Governor's warrants had yet been received from New Jersey (Stip. 4).

7. According to the letter from the New Jersey Governor's office, the Governor's warrants were sent to the Pennsylvania Governor on March 8, 1979 (Exhibit 7). At the hearing on March 27, 1979, the petitioner was not brought down once again, this time because he was a federal prisoner and the Governor's warrants were lodged *in absentia.* The fugitive charges against petitioner were dismissed and the matter continued until April 17, 1979 for a hearing on a *habeas* petition. The hearing of April 17,

---

1. These New Jersey indictments charged petitioner with Atrocious Assault and Battery (2 counts), Assault with a Dangerous Weapon (2 counts), Assault with Intent to Kill (2 counts), Atrocious Assault with Intent to Rape, Lewdness, Assault with Intent to Kidnap, and Kidnap (# 34–78; # 108, 109–178 (Defense Exhibit 30)).

1979 apparently never took place; there is no indication on the record why it was continued "for status" until May 23, 1979.

8. On April 24, 1979 petitioner wrote a letter to Ms. Anne T. Manning, Assistant Deputy Public Defender, Camden, New Jersey, and asked why he was not brought to Camden for trial (Exhibit 45). Ms. Manning responded by letter dated May 2, 1979 and advised petitioner if he wished to come back to New Jersey he could proceed by filing under the Agreement (Exhibit 46).

9. On May 9, 1979, petitioner again requested extradition when he appeared before Judge J. William Ditter, Jr., of the United States District Court for the Eastern District of Pennsylvania, in violation of probation charges (Cr.No. 76–47, Dkt.No. 22; see Ex. 3).

10. On May 23, 1979 petitioner appeared before Judge Gafni who noted, "Governors Warrants are not contested by Defense. Defense requests immediate extradition. Defendant to be ordered extradited on 6/4/79. (Further investigation by C/W)." (Exhibit 8).

11. On May 23 and May 24, 1979 petitioner was tried in Pennsylvania before The Hon. Charles Durham, Judge of the Court of Common Pleas and convicted.[2] At the conclusion of that trial, petitioner was slated for extradition to New Jersey (Exhibit 11).

12. On June 4, 1979 petitioner's extradition to New Jersey was stayed at the request of the Governor of Pennsylvania; the matter was continued to July 13, 1979 (Exhibit 8). On July 7, 1979 petitioner was sentenced by Judge Durham on the Pennsylvania conviction (Exhibit 10). There is no record of disposition of the July 13, 1979 listing in Room 784 before Judge Gafni.

13. On August 3, 1979 petitioner's federal violation of probation detainer was discharged and probation reimposed (Cr.No. 76–47, Dkt.Nos. 23 and 24).

14. On August 8, 1979 petitioner again wrote to Ms. Anne T. Manning, his appointed lawyer for the New Jersey charges, and requested her to advise him of his options (Exhibit 47). She responded on August 15, 1979 and advised petitioner, "[i]f you want to have the matter disposed of, you should request you be returned to New Jersey under the Interstate Agreement on Detainers. *Ask the warden for the appropriate forms.*" (Exhibit 49) (Emphasis supplied).[3]

**2.** *Commonwealth v. James H. Johnson,* Court of Common Pleas, First Judicial District of Pennsylvania, Trial Division, January Session 1979: No. 1845—Recklessly Endang. Person, Terroristic Threats; No. 1846—Poss.Instrs.Crime Genly., Poss.Instrs.Crime Weapon; No. 1847—Carrying Firearms Public St/Pl, Carrying Firearms Without a License, Firearm Without a License, Auto; No. 1848—Simple Assault, Agg.Assault.

**3.** The following standard forms are among those used in connection with the Interstate Agreement on Detainers:

Form 1—"Notice of Untried Indictment, Information or Complaint and of Right to Request Disposition." This form informs the prisoner of the indictments pending against him in the state requesting extradition, and advises him that he has the right to request final disposition of all pending charges in that state. It also advises the defendant that the state in which the indictments are pending may institute proceedings to obtain a final disposition, but that the defendant may contest these proceedings. The form is to be signed by the state's designated custodial authority and the defendant.

Form 2—"Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictments, Information or Complaints." Five copies of this form should be produced: two copies are to be retained by the warden and inmate and one signed copy each is to be sent to the "Agreement Administrator" of the state of incarceration, and by registered or certified mail to the prosecuting official of the requesting state, and the clerk of the court which has jurisdiction over the matter. The form acts as a waiver of extradition with respect to any charge pending in the state filing the detainer, and puts officials in the requesting state on notice of the speedy trial requirements of the Act that are activated by the inmate's request for disposition. The form is to be signed by the inmate.

Form 3—"Certificate of Inmate Status." This form, to be attached to all copies of Form 2 submitted by an inmate, and sent to the prosecutor requesting extradition upon the warden's receipt of Form 5 (described below), certifies that the defendant is in fact an inmate of the sending state, and provides basic information on, *inter alia,* the inmate's sentence, his parole eligibility date, and detainers currently on file from the requesting state. The form is to be

15. On August 9, 1979 petitioner was transferred to the Pennsylvania State Correctional Institution at Graterford (Hearing Ex. D–3), and advised by prison officials that there was no New Jersey detainer lodged against him.

16. Notwithstanding the erroneous information received from the Graterford officials, petitioner had actual knowledge of the outstanding New Jersey detainer from the prior proceedings. Thus, on August 20, 1979 petitioner wrote a letter addressed to "Prosecutor, Camden County" that he intended to assert his rights under N.J.S. 2A:159–A, Article III and demand a speedy trial. The letter stated where he was incarcerated, his term of sentence and his parole date. He wrote that his attorney, Anne T. Manning, advised him to make this request. However, no copy of this letter was sent to Ms. Manning; there is no evidence that John B. Mariano, the New Jersey prosecutor handling petitioner's case, received this communication.

17. The Philadelphia District Attorney's office sent a letter to Camden officials on September 26, 1979, advised them of petitioner's incarceration at Graterford, recommended they proceed under the agreement to extradite, and stated that the New Jersey Governor's warrants would be withdrawn on October 16, 1979 (Exhibit 12). By a letter dated October 2, 1979 the Camden County prosecutor lodged yet another detainer against petitioner's release (Exhibit 13). Thereafter, on October 10, 1979, Camden prosecutors forwarded Form 5, "Request for Temporary Custody" to Graterford (Exhibits 14 and 15).

18. On October 12, 1979 petitioner wrote to John B. Mariano, Camden prosecutor, stated his receipt of Request for Temporary Custody (Form 5) and reiterated his request for final disposition of the charges in New Jersey under Article III of the Agreement. The letter stated, "I want very much to get this matter over expeditiously." Petitioner said that the bench warrant had been on record since early January 1979 without speedy disposition and advised the prosecutor that "This matter should be over within six months." (Exhibit 37). There is no evidence that Mr. Mariano personally received this communication.

19. Although petitioner contends that he filled out a Form 2 request for disposition and delivered it to the assessment unit at Graterford, no Form 2 request appears in his file and no evidence that such Form was prepared was produced. Petitioner has failed to prove by a preponderance of the evidence that this Form was ever delivered to the appropriate prison officials.

20. On October 23, 1979 Records Officer Kooker, in a letter to the Camden prosecutors, acknowledged receipt of Form 5 and forwarded Form 4 to the Camden authorities with the notation that Form 5 would be forthcoming as soon as court procedures were completed (Exhibits 16 and 17).

21. On November 14, 1979 petitioner sent a letter to The Hon. Charles A. Rizzi, Assistant Judge in Camden County (Exhibit 20). Said letter did not refer to previous letters to the Camden County prosecutor's office nor to any Form 2 submitted by petitioner to appropriate prison authorities. No information was given regarding his term of incarceration, parole eligibility, etc.

22. On November 14, 1979 petitioner also sent a letter to John B. Mariano, Cam-

signed by the state's designated custodial authority.

Form 4—"Offer to Deliver Temporary Custody." This form sets forth the sentencing state's agreement to deliver temporary custody of the inmate for trial in another state of the indictments enumerated on the form; it is to be signed by the custodial authority in the sending state. It is attached to all copies of Form 2 if it is the inmate who requests disposition under Article III; in the case of a request initiated by a prosecutor under Article IV, it is sent to the prosecutor upon receipt of Form 5 and to all other prosecutors in the requesting state who have lodged detainers against the inmate.

Form 5—"Request for Temporary Custody." This form informs officials of the state in which the inmate is in custody that temporary custody for trial is sought by another state, and it states the offenses with which the inmate is charged in the requesting state. It is to be signed by a prosecuting official of the requesting state and by a judicial officer of that state.

den Prosecutor. The letter acknowledged receipt of the Form 5 and asserted that the detainer was no longer valid as the time limit had expired. Petitioner stated that his first demand for speedy trial in New Jersey was January, 1979; the letter did not mention the two previous letters sent to the Camden prosecutor or refer to his term of incarceration, eligibility for parole, etc. (Exhibit 38). There is no evidence that Mr. Mariano personally received this communication.

23. On November 16, 1979 petitioner filed a petition for writ of *habeas corpus* in the Court of Common Pleas of Montgomery County, Pennsylvania (Exhibit 21).

24. On November 28, 1979 Judge Rizzi acknowledged receipt of petitioner's November 14, 1979 letter. (Exhibit 19). Judge Rizzi denied petitioner's request to have the detainers withdrawn and advised petitioner that he would be delivered to New Jersey authorities in accordance with the request for temporary custody dated October 5, 1979.

25. Another petition for *habeas corpus* was filed on December 6, 1979 in Montgomery County, Pennsylvania by the Public Defender representing petitioner (Exhibit 21). On December 11, 1979 in an appearance before Judge Smillie, petitioner was advised of the outstanding detainer and request for temporary custody by New Jersey officials; Judge Smillie stated of record in open court that petitioner wanted to go to New Jersey to dispose of those charges (Exhibit 22, p. 6). An Assistant District Attorney was present on behalf of the Commonwealth but because the court had been advised late the day before that witnesses were unavailable, the Camden authorities were excused by Judge Smillie and were not present (Exhibit 22, p. 2).

26. Judge Smillie continued the hearing scheduled for December 11, 1979 to December 21, 1979 at the Commonwealth's request (Exhibits 10, 21 and 22, p. 4) by Order dated December 14, 1979, which was received by the Camden County prosecutor's office on December 19, 1979 (Exhibit 39). The December 21, 1979 hearing on the *habeas* matter was continued because of a snowstorm.

27. On December 2, 1979 petitioner wrote to Ms. Anne T. Manning and advised her of the November 13, 1979 hearing before Judge Smillie. No mention was made of any requests for transfer under the Agreement (Exhibit 50).

28. No action with respect to petitioner and his return to New Jersey was taken until two and one-half months later. On February 28, 1980 the Montgomery County District Attorney's office wrote a letter to the Camden County prosecutors suggesting that a second request under the Agreement be filed because of the staleness of the earlier detainer (Exhibit 23). Such a form was prepared and mailed on March 12, 1980. (Exhibits 24 and 40).

29. There having been no official action since December 11, 1979, at which time Judge Smillie had personally assured petitioner that his matter would be disposed of within thirty (30) days, on March 25, 1980 petitioner filed a request to Mr. Kooker requesting assistance in returning him to New Jersey as soon as possible. Mr. Kooker did not prepare Form 2 or tell petitioner to do so but advised him to bring this matter to the court's attention and referred him to the Correctional Compact Act if he wished to remain in New Jersey following his return. (Exhibit 25).

30. In addition, petitioner sent a letter to his federal probation officer on March 25, 1980 and requested that the federal probation officer tell him whether the probation officer had advised the prosecutor to dispose of the outstanding indictments (Exhibit 26).

31. On March 26, 1980 petitioner filed a *pro se* motion to dismiss the charges in New Jersey based on a violation of the Agreement and various constitutional claims. Notice of this petition was given by Judge Rizzi to the Camden County Prosecutor. No mention was made in the petition of the informal requests for transfer made by petitioner on August 20, 1979, October 12, 1979 or November 14, 1979, nor was any mention made of a Form 2 having been filed (Exhibit 27).

32. On March 27, 1980 a second request for custody under the Agreement was filed and continued to April 1, 1980 (Stip. 23).

33. On May 9, 1980 Judge Rizzi sent a letter to petitioner saying that he would have a hearing on his March 26, 1980 motion to dismiss when he returned to New Jersey. On May 16, 1980 petitioner made a motion before the Montgomery County Court for certain notes of testimony and court records in support of his petition for writ of *habeas corpus*. Another petition for writ of *habeas corpus* was filed on May 30, 1980 and continued until June 5, 1980 (Stip. 24).

34. At the June 5, 1980 hearing before Judge Smillie, the District Attorney requested a continuance because he did not have the proper documents to proceed under the Agreement. The court denied the motion for continuance, discharged the detainer, sustained petitioner's *habeas* petition and stated that the conduct of the law enforcement officials was "outrageous. It is a disgraceful and atrocious abuse of process." The court also stated that if another request under the Agreement would be filed the prosecutors were "running a great risk of a very serious lawsuit in my opinion in the Federal court." (Exhibit 28 at p. 8; see also Exhibits 10, 21, 28 and 29).

35. On June 23, 1980 a third Form 5 under the Agreement was certified by Judge Rizzi and forwarded to Montgomery County officials (Exhibit 41). However, three days before that, on June 20, 1980, Graterford officials prepared a Form 1 notice to petitioner which was not received by petitioner until July 16, 1980 (Exhibit 30).

36. The third request by Camden County was filed with the court on July 7, 1980 and ordered to be heard on July 17, 1980 by Judge Stanziani. The next day, July 8, 1980, petitioner filed a writ of *habeas corpus* with the Montgomery County Court, which was also listed for July 17, 1980 (Stip. 27). On July 16, 1980 petitioner received the third Form 1 notice which had been prepared by Graterford officials on June 20, 1980 (Exhibit 30).

37. On July 17, 1980 a hearing was held before The Hon. William W. Vogel of the Court of Common Pleas of Montgomery County, Pennsylvania and the matter was held under advisement for the submission of briefs (Stip. 28).

38. On August 11, 1980 Judge Vogel entered an Order denying the petition for writ of *habeas corpus*, holding the New Jersey detainer valid and ordering the petitioner transferred to New Jersey. (Exhibits 10, 21, 32).

39. On August 15, 1980, pursuant to Judge Vogel's Order, New Jersey authorities took custody of the petitioner and transported him to New Jersey (Stip. 30).

40. On August 22, 1980 the Public Defender who had been on vacation when Judge Vogel's Order was filed, filed a petition for *supersedeas* which Judge Vogel granted. (Exhibits 10, 21, 32 and 33).

41. On August 25, 1980 the Commonwealth filed an answer to the petition for *supersedeas* which had previously been granted by Judge Vogel. On August 29, 1980 Judge Vogel filed an opinion regarding the *habeas corpus* he had denied and the *supersedeas* he had granted. (Exhibits 32 and 33).

42. Petitioner's New Jersey motion to dismiss was heard by The Hon. Mary Ellen Talbott, Judge of the Superior Court of Camden, on October 6, 1980. Petitioner was present and testified at this hearing. His testimony on that occasion (Tr. 37–46) was consistent with his testimony before this court and review of that transcript, not available until after his testimony herein, lends credence to the evidence presented on his behalf. Judge Talbott took the matter under advisement and entered an opinion dated October 20, 1980 (Exhibit 42, transcript). The Court concluded that "the indictments brought against defendant should not be dismissed for failure of the authorities to properly effect the Interstate Agreement on Detainers Act. Defendant Johnson has not shown that he complied with the requirements of Art. III of the Detainers Act." Judge Talbott determined that "[a]t no time was there delivered to the

Camden County Prosecutor or to Judge Douglas or Judge Rizzi any of the information required by the Statute." She did not decide credibility issues adversely to petitioner but ruled that his claims were inadequate as a matter of law.

43. Petitioner was tried on the New Jersey charges from December 1–9, 1980 and convicted (with the exception of two charges) (Stip. 35).

44. On February 20, 1981 petitioner was sentenced in the Camden courts. He stated his intention to appeal and seek bail pending appeal, and demanded return to Pennsylvania on February 26, 1981 (State Exhibit 5; Brief Contra Petition for Habeas Corpus). Notice of appeal was filed by petitioner's New Jersey counsel and docketed on April 6, 1981 (Docket No. A–3114–80–1–4). The suffix code denotes special processing of the appeal under an Order of the Supreme Court providing for the expeditious processing of appeals; (State Exhibit 6; *Id.*). However, we have not been informed of any disposition of this appeal to date.

45. Petitioner was returned by the New Jersey authorities to the State Correctional Institution at Graterford, Pennsylvania to serve the remainder of this Pennsylvania sentence on April 9, 1981 (Form JBC–13A, Hearing Ex. D–2).

46. Petitioner filed his first petition for writ of *habeas corpus* before this court relating to the New Jersey conviction on October 27, 1980, Civil Action No. 80–4173 (Dkt. Ent. 1).

47. On November 20, 1980, Magistrate Edwin E. Naythons filed a report and recommendation that the petition be denied without prejudice (Dkt. Ent. 7).

48. Counsel was appointed by the court; the appearance of Thomas E. Butler, Jr. Esquire, on behalf of James Harold Johnson was entered on April 8, 1981 (Dkt. Ent. 14).

49. Petitioner then filed this *habeas* action on November 7, 1980 (Dkt. Ent. 1). On June 3, 1981, upon the consent of the parties, the court ordered the Superintendent at Graterford to retain custody of petitioner until further Order of the court. This Order stayed transfer of petitioner to New Jersey authorities and stayed any release on parole. By Order of July 14, 1981 (Dkt. Ent. 13), a hearing was held on July 20, 1981 at which petitioner was present and testified. At that hearing, the petition for writ of *habeas corpus*, Civil Action No. 80–4173, was dismissed on the request of petitioner (C.A. 80–4173, Dkt. Ent. 15).

50. On November 20, 1981, upon receipt of the complete file pertaining to the prisoner at Graterford, the court heard additional testimony to determine the nature of petitioner's requests at Graterford to be transferred to New Jersey to stand trial (Dkt. Ent. 16). The testimony establishes that many such requests were made, but petitioner has not met his burden of proving that a Form 2 was filed.

## DISCUSSION

The issue on the merits is whether a valid request for transfer under Article III of the Interstate Agreement on Detainers, 42 Pa.C.S.A. § 9101 *et seq.*, N.J.S.A. 2A:159A–1 *et seq.*[4] has been made. Pennsylvania and New Jersey have both enacted the Agreement, the purpose of which, as set forth in Article I, is to encourage the expeditious and orderly disposition of outstanding charges against prisoners and the determination of the proper status of detainers based on untried indictments. The Act establishes two procedures for the transfer of a prisoner in one jurisdiction to the temporary custody of another jurisdiction one upon request of the prisoner and the other upon request of the jurisdiction seeking custody. *See, Adams v. Cuyler,* 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d (1981).

4. Although the Agreement is adopted by state legislatures, it is a Congressionally sanctioned interstate compact the interpretation of which presents a question of federal law. *Adams v. Cuyler,* 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d

641 (1981). Therefore, federal *habeas corpus* jurisdiction encompasses a claim presented under the Agreement. *Beebe v. Vaughn,* 430 F.Supp. 1220 (D.Del.1977).

■ Article III of the Agreement prescribes the procedure by which a prisoner may request prompt disposition of outstanding charges. The state must bring an inmate to trial within 180 days after its receipt of a proper request for disposition under Article III. Its failure to do so requires dismissal of the indictment by the appropriate court of the jurisdiction where the indictment has been pending.

■ The authorities of the jurisdiction where the charges are pending may proceed under the provisions of Article IV of the Agreement in order to obtain custody of the prisoner. Under Article IV the state official must present a written request for temporary custody to the appropriate authorities of the state where the prisoner is incarcerated. The prisoner must be brought to trial within 120 days of arrival in the receiving state or the charges must be dismissed under Article V(c).

■ Petitioner contends that Article III requests were made as early as January of 1979 but has not produced evidence of such. However, petitioner has produced three letters purporting to be requests for transfer under Article III. These letters were dated August 20, 1979, October 12, 1979 and November 14, 1979; 180 days from the last letter expired on May 12, 1979. If these letters constituted proper requests for disposition (and thus triggered the time limitations of Article III), petitioner's New Jersey trial on December 1, 1980 was untimely. If the letters were not sufficient to invoke Article III, Article IV was operative and petitioner was timely tried within 120 days of his arrival in New Jersey.

■ Before the merits of the petition are reached, a federal court must consider whether petitioner has exhausted state remedies. Exhaustion is required in *habeas* cases as a matter of comity in order to give state courts the initial opportunity to correct their own errors. *See, e.g., Paullett v. Howard*, 634 F.2d 117 (3d Cir. 1980). In this case, proceedings in both Pennsylvania and New Jersey are challenged and we must decide whether the remedies in each have been exhausted.

In Pennsylvania, petitioner by writ of *habeas corpus* challenged the validity of a third New Jersey detainer. Judge William W. Vogel entered an Order in the Court of Common Pleas for Montgomery County which denied Johnson's petition for *habeas corpus*, held the third New Jersey detainer valid (notwithstanding dismissal of the second detainer with prejudice by Judge Smillie), and ordered the petitioner transferred to New Jersey. It was only then that New Jersey authorities took custody of petitioner and transported him to New Jersey. Judge Vogel subsequently granted a petition for *supersedeas* and requested the New Jersey authorities to return petitioner to Pennsylvania for a determination of the validity of the detainer by the Pennsylvania Superior Court. New Jersey authorities refused to honor this request and petitioner was held in New Jersey and tried on the New Jersey charges. Therefore, petitioner can no longer seek relief preventing his return to New Jersey for trial from the Pennsylvania courts; this is conceded by counsel for Pennsylvania and New Jersey officials. Petitioner has been deprived of the opportunity for further exhaustion of *habeas* remedies in Pennsylvania.[5]

Petitioner does have remedies still available to him in New Jersey. Petitioner challenged the validity of the New Jersey indictment under both Article III and Article IV of the Agreement by a pretrial motion to dismiss. Judge Mary Ellen Talbott denied this motion in an Opinion dated October 20, 1980. This ruling together with other challenges may be reviewed on the

---

5. Whether the facts stated a cause of action for damages against Pennsylvania officials is not before us. The Philadelphia Police Department and the District Attorney's Office erroneously advised New Jersey on two occasions that petitioner refused to waive extradition when he had stated of record his desire to be returned to New Jersey for disposition of the charges in that state. Petitioner asked Records Officer Kooker to be returned to New Jersey on March 25, 1980, but Kooker responded with regard to Art. IV proceedings and did not inform him of his right to institute Art. III proceedings or assist him in filing Form 2 (Ex. 25).

appeal from the subsequent conviction which is now pending in the New Jersey Superior Court, Appellate Division.

At the conference of counsel held before this court it was represented that the New Jersey appellate courts would not reach the matter on the present record for at least six months if not longer. In addition, all parties agreed that the record before this court contains correspondence relevant to the Article III issue that was not part of the record considered by Judge Talbott.[6] Thus, there was the likelihood that the New Jersey appellate courts would remand the matter to the trial court for further proceedings and there would be even more delay in the state courts. Because of this potential delay and because of the new evidence, counsel for New Jersey conceded the need for an evidentiary hearing.

■ The prosecutor's concession regarding the need for evidentiary findings is relevant to our determination that special circumstances were present which required the court to make additional findings of fact before deciding whether the merits of petitioner's contentions could be addressed. 28 U.S.C. § 2254(d)(1), (2) and (3). We recognize that state prosecutors cannot waive the requirement of exhaustion, *United States ex rel. Trantino v. Hatrack*, 563 F.2d 86 (3d Cir. 1977), and do not rely on this waiver to excuse petitioner from resorting to available state remedies.

Petitioner is now paroled on his Pennsylvania sentence and remains in custody only by reason of the New Jersey conviction. New Jersey seeks immediate custody of a person who would not now be in custody were it not for proceedings in Pennsylvania and New Jersey, which are still subject to challenge by the petitioner in the courts of New Jersey. Petitioner asserts Judge Talbott's denial of petitioner's motion in New Jersey Superior Court to dismiss the pending New Jersey indictments (on the ground

of non-compliance with the Agreement) was incorrect and that the proceedings before Judge Vogel removing him to New Jersey placed him in double jeopardy because a prior detainer seeking to remove him to New Jersey had already been dismissed by Judge Smillie. But the New Jersey Supreme Court may review not only the events that occurred at trial but whether the trial should have been held at all.

■ A federal *habeas corpus* petitioner has the burden of proving that he has met the procedural requisites that entitle him to relief.

The statutory exhaustion requirement provides that a federal court shall not grant a state prisoner's petition for habeas corpus 'unless it appears that the applicant has exhausted the remedies available in the courts of the State.' 28 U.S.C. § 2254 (1976). The requirement is not jurisdictional, but is rooted in the policy of federal-state comity. *See, e.g. United States ex rel. Speaks v. Brierley*, 417 F.2d 597, 600 (3d Cir. 1969), *cert. denied*, 397 U.S. 1051 [90 S.Ct. 1388, 25 L.Ed.2d 665] (1970). It represents 'an accommodation of our federal system designed to give the State the initial "opportunity to pass upon and correct" alleged violations of its prisoners' civil rights.' *Wildwording v. Swenson*, 404 U.S. 249, 250 [92 S.Ct. 407, 409, 30 L.Ed.2d 418] (1971) (per curiam) (quoting *Fay v. Noia*, 372 U.S. 391, 438 [83 S.Ct. 822, 848, 9 L.Ed.2d 837] (1963)).

*Brown v. Cuyler*, 669 F.2d 155 at 157 (3d Cir. 1982). *See also, Lovell v. Arnold*, 391 F.Supp. 1047 (M.D.Pa.1975).

■ So long as his appeal is pending in the New Jersey Supreme Court, comity requires that a determination be made by it. Unless extended delay in the state process renders that process ineffective to protect

---

**6.** The court credits petitioner's contention that such letters were prepared and sent as he alleges but that they were in Pennsylvania and unavailable to him at the time of his New Jersey hearing; the court does not accept New Jersey's contention that the letters were created

after the fact in view of the lack of substantiating evidence and the support on the record for petitioner's other contentions regarding his requests for prompt disposition of the New Jersey charges.

the rights of a prisoner,[7] it is only after there has been adherence to the exhaustion requirement and the petitioner in state custody can demonstrate that the state court of last resort has expressly decided the issues he raises in his petition that they may be decided in a federal court.

Therefore, the *habeas* petition will be denied. However, the order permitting petitioner to be removed to New Jersey will be stayed to permit petitioner to request a stay from the Court of Appeals if he so chooses. If petitioner files a timely request for stay, the temporary stay of this court shall remain in effect until the Third Circuit acts on such stay has been timely requested.

---

**7.** *See, Codispoti v. Howard,* 589 F.2d 135 (3d Cir. 1978); *United States ex rel. Geisler v. Wal-* ters, 510 F.2d 887 (3d Cir. 1975).