GEORGE DOUGLAS WILLIAMS, petitioner.

Suffolk.   June 28, 1979. — August 2, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Constitutional Law*, Speedy trial. *Due Process of Law*, Delay in appeal.
   *Practice, Criminal*, Appeal. *Supreme Judicial Court*, Superintend-
   ence of inferior courts.

A delay of nine months between the time a defendant obtained an
   order entitling him to a free transcript and the date of delivery of
   the last volume, which was caused by the neglect of the official
   court reporter in transcribing the trial record, did not deny the
   defendant due process of law where the Commonwealth's fault was
   palliated by efforts of various court officials to obtain the transcript
   and where the defendant was not prejudiced by the delay. [624-628]

PETITION filed in the Supreme Judicial Court for the
county of Suffolk on February 1, 1978.

The case was heard by *Liacos*, J.

The case was submitted on briefs.

*Bernard M. Grossberg* for the petitioner.

*Newman Flanagan*, District Attorney, & *Michael J.
Traft*, Assistant District Attorney, for the Common-
wealth.

KAPLAN, J. This petition for a writ of habeas corpus or,
in the alternative, for a writ of error, raises the question
whether the petitioner, convicted of crime and serving a
prison sentence, was deprived of a constitutional right by
reason of delay of the official court reporter in transcrib-
ing the trial record, which resulted in delay in the peti-
tioner's perfecting and prosecuting his appeal from the
conviction. We think the delay was excessive, but, analyz-
ing the issues, notably those of the Commonwealth's re-
sponsibility and the possible prejudice to the petitioner,
we conclude that there was no constitutional deprivation.

In all this we agree with a single justice of this court who dismissed the petition.

Conviction after trial in the Superior Court of the crime of conspiring to violate G. L. c. 94C, § 32 (possession with intent to distribute a controlled substance, cocaine), occurred on October 25, 1976, and the petitioner was sentenced to a term of nine to ten years at the Massachusetts Correctional Institution at Walpole (now being served at M.C.I., Norfolk). Claim of appeal was filed on November 1, 1976, but it was not until June 13, 1977, that the petitioner (through new counsel) obtained an order from the trial judge entitling him to a free transcript, evidently superseding an earlier order for preparation of the transcript at the petitioner's expense. The court reporters were on notice. On October 28, 1977, we find petitioner's counsel inquiring of a clerk of the Superior Court when he might expect the transcript. The clerk responded promptly that he was advising the Chief Justice of the Superior Court of the failure to deliver the transcript, and was asking the Chief Justice for help in expediting the process. Counsel followed up with an inquiry to an administrative assistant to the Chief Justice in December, 1977,[1] at which time the assistant had a statement from the reporter that the transcript could be expected in two to three weeks; and counsel was later informed of an assurance by the reporter that the transcript would be in hand by January 20, 1978. There was finally an assurance by the reporter direct to counsel that one-third of the transcript would be delivered by January 27, 1978.

The reporter defaulted on this as on prior undertakings, and on February 1, 1978, the petitioner brought the present petition in the county court, rehearsing the facts as above and praying (on habeas corpus) that he be released forthwith from custody or (on writ of error) that he be released on personal recognizance pending final

---

[1] About the same date the petitioner himself wrote to the Chief Justice of this court seeking help.

decision of the appeal.[2] The single justice, resorting to this court's power of superintendency (G. L. c. 211, § 3), brought the reporter before him,[3] and by February 27, 1978, most of the transcript had been delivered, with the remainder following on March 27, 1978. On March 3, 1978, the single justice allowed the respondent's motion to dismiss the petition, explaining his order in a brief memorandum. From the dismissal the petitioner took the present appeal to the full bench.[4]

The guaranty of a speedy trial set forth in the Sixth Amendment to the United States Constitution (and art. 11 of the Massachusetts Declaration of Rights) is not read as applying to the appellate process. See *Doescher* v. *Estelle,* 454 F. Supp. 943, 949-950 (N.D. Tex. 1978), and cases cited. Nevertheless, as we acknowledged in *Commonwealth* v. *Swenson,* 368 Mass. 268, 279-280 (1975), "specific circumstances . . . such as deliberate blocking of appellate rights or inordinate and prejudicial delay without a defendant's consent, may rise to the level of constitutional error" (infringement of due process or, possibly, equal protection). Numerous decisions, most of them by Federal courts, have begun to fill in the constitutional picture. See, e.g., *Layne* v. *Gunter,* 559 F.2d 850, 851 (1st Cir. 1977), cert. denied, 434 U.S. 1038 (1978); *Rivera* v. *Concepcion,* 469 F.2d 17, 19-20 (1st Cir. 1972); *Codispoti* v. *Howard,* 589 F.2d 135, 139-142 (3d Cir. 1978); *Dozie* v. *Cady,* 430 F.2d 637, 638 (7th Cir. 1970); *Way* v. *Crouse,* 421 F.2d 145,

---

[2] In his brief herein, the petitioner requests "release from incarceration pending appeal."

[3] The single justice's memorandum accompanying his March 3, 1978, order, referred to below, noted that the reporter was no longer serving as such in the Superior Court.

[4] To complete the chronology: In November, 1977, the petitioner had filed a designation of the pleadings for the summary of record. Assignments of error were filed in the Superior Court in May, 1978 (an extension of time for that purpose having been allowed by the trial judge), and the appeal was entered in the Appeals Court in September, 1978. The appeal was heard there in January, 1979, and awaits decision as this opinion is written.

146 (10th Cir. 1970); *State* v. *Lagerquist,* 254 S.C. 501, 505-506 (1970), cert. denied, 401 U.S. 937 (1971).[5]

We may assume that delay in the disposition of a criminal appeal does not affect its outcome, as delay of a trial may well do through loss of witnesses or the like; where, however, a retrial is ordered on appeal, there can be a somewhat similar ultimate difficulty through disappearance of witnesses. For an appellant serving a sentence pending the appeal, delay may work an irremediable unjust loss of liberty in case his conviction is finally overthrown; and for any appellant, even one not in custody, delay may entail anxiety, forfeiture of opportunity, and damage to reputation, among other conceivable injuries. It is not a satisfactory answer to such hardships that the presumption of innocence will have been abraded by the fact of the initial conviction from which the appeal is being taken. See *Rivera* v. *Concepcion, supra,* 469 F.2d at 19. To be considered, too, is the interest of the legal system and society at large in the expedition of appeals, especially criminal appeals. See *Reese* v. *State,* 481 S.W.2d 841, 843 (Tex. Crim. App. 1972); Christian, Delay in Criminal Appeals: A Functional Analysis of One Court's Work, 23 Stan. L. Rev. 676 (1971).

---

[5] Typically the Federal cases arise on habeas corpus claiming error of constitutional dimensions in State criminal convictions and seeking to excuse the failure to exhaust State appellate processes (see 28 U.S.C. § 2254[b] [1976]) on the ground that those processes have been unreasonably or unjustifiably delayed. In this connection the courts point out that delay on appeal may violate an appellant's due process rights. Judge Mansfield suggests that a decision that the Federal court should go on, because of such delay, to decide the merits of an attack on a conviction, need not involve a ruling that the delay was itself an unconstitutional deprivation. See his opinion, concurring and dissenting, in *Roberson* v. *Connecticut,* 501 F.2d 305, 310 n.2 (2d Cir. 1974). Cf. *Commonwealth* v. *Dominico,* 1 Mass. App. Ct. 693, 722-723 (1974). On the other hand, there is evident pressure on Federal courts to overlook even serious State appellate delay out of considerations of comity, so exhaustion is not easily found and when found may equate with a finding of unconstitutional delay.

It is upon grounds such as those just mentioned that inordinate delay in the appellate process may rise to the level of constitutional error. Any significant delay coming to the attention of a court should pose not only the question how it may be feasibly cut short, but also the question whether the particular appellant may not deserve additional remedy. In adjudging the character of the delay as well as the desirability of sanction a court has to consider the extent of the delay, its causes, its impact on the appellant, and the degrees of responsibility or fault attributable to the appellant on the one hand and the State on the other. See *Doescher* v. *Estelle, supra,* 454 F. Supp. at 947. Cf. *Barker* v. *Wingo,* 407 U.S. 514 (1972).

The single justice counted the time elapsed for preparation of the transcript as from the order for a free transcript to the date of delivery of the last volume (some nine months), and he commented: "While the delay is excessive, it does not reach the level of a denial of due process of law." He did not consider the petitioner blameworthy in relation to the delay. It was hardly necessary to say that the reporter's unexplained neglect was attributable to the State, as reporters are "sworn officers of the court" (G. L. c. 221, § 82, as amended by St. 1973, c. 562). But the State's fault was palliated because, in the face of a performance by the reporter certainly poor but not shown to have been characteristic, "several conscientious efforts had been made by officials of the Superior Court to obtain the transcript for petitioner," and on their part there was no "intentional or negligent violation of petitioner's rights." (The conclusion is not inconsistent with an observation by us that the officials might have reacted more sharply when the reporter began to exhibit signs of his unconcern.) The single justice went on to note, in respect to the issue of specific injury or prejudice to the petitioner, that even if, on the given facts, the petitioner should be thought to deserve some enlargement from confinement, denial of the remedy would not be material — would not truly deprive him of liberty — because on

another conviction he was liable to a term of imprisonment "from and after" the sentence to be served on the conviction under appeal.[6] For analysis of "prejudice" in other settings, see *Commonwealth* v. *Swenson, supra*, 368 Mass. at 280; *Commonwealth* v. *Fontaine*, 8 Mass. App. Ct. 51, 55-58 (1979).

As already indicated, in more compelling circumstances it might not have been enough for the single justice merely to meet the delay as far as possible by inducing the reporter, at long last, to produce the transcript: such a course might not do enough justice to the appellant, and would offer little incentive to the Commonwealth to be vigilant in overseeing reporters' work.[7] The appellant might be entitled to specific remedy: release from confinement pending his appeal with any appropriate arrangement regarding bail (see *Rivera* v. *Concepcion, supra*, 469 F.2d at 19-20; *Morales Roque* v. *Puerto Rico*, 558 F.2d 606 [1st Cir. 1976]), or, possibly, under extreme conditions, some more encompassing relief.[8]

*Order of the single justice affirmed.*

---

[6] As to crediting of time served under the present conviction to the succeeding "from and after" sentence, in case the present conviction is finally reversed, cf. *Manning* v. *Superintendent, M.C.I., Norfolk*, 372 Mass. 387 (1977).

[7] On this point Judge Aldrich said in *Rivera* v. *Concepcion*, 469 F.2d 17, 20 (1st Cir. 1972), that long incarceration while the appeal process languished was not overcome merely "by a present exercise of diligence and treated as if it had not occurred. Any such rule would mean that a defendant may be freely given improper consideration until the system, or the parties at fault, are caught out."

[8] Thus in *Codispoti* v. *Howard*, 589 F.2d 135, 142 (3d Cir. 1978), there is a suggestion that if very lengthy unjustified delay were found in violation of the appellant's constitutional rights, he might claim dismissal of the charges on that basis itself; and in *People* v. *Olsen*, 462 F. Supp. 608 (D. Guam, App. Div. 1978), a Federal court, on direct review of a conviction in the Superior Court of Guam, did dismiss because that was thought the only effective remedy for a delay of more than two years in preparation of a transcript. In circumstances of extended delay, *People* v. *Ruhl*, 63 Cal. App. 3d Supp. 6 (Super. Ct., Los Angeles, App. Dep't 1976), also dismissed a charge (which involved, however, a relatively minor traffic offense). See also *Doescher* v. *Estelle, supra*, 454 F. Supp. at 951.