COMMONWEALTH *vs.* LESLIE LEE
(and five companion cases[1]).

Plymouth. October 3, 1984. — March 7, 1985.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, & O'CONNOR, JJ.

*Constitutional Law,* Assistance of counsel, Waiver of constitutional rights, Delay in appeal. *Waiver. Conflict of Interest. Practice, Criminal,* Assistance of counsel, Appeal. *Evidence,* Failure to produce witness, Religious beliefs.

In a criminal case in which counsel for the two defendants had been appointed on a stand-by basis at the arraignment because the defendants had insisted on representing themselves; in which the defendants had objected to defense counsel, claiming that counsel were unprepared and that they had a conflict of interest because they were former district attorneys; and in which appointed counsel assumed conduct of the trial shortly after the Commonwealth's presentation of evidence had begun, the record did not support the defendants' contention that they had been denied their right to the effective assistance of counsel. [216-219]

At the trial of a robbery indictment during which a defendant had testified that on the day of the robbery he was with two named individuals at a location far removed from the scene of the robbery, there was no error in permitting the prosecutor to ask the defendant whether he had made any effort to obtain the testimony of these persons, to which the defendant replied that he was incarcerated before trial without access to a telephone. [219]

In the circumstances of the criminal trial of two defendants who, throughout the proceeding, had conspicuously manifested certain religious beliefs, no substantial risk of a miscarriage of justice was presented by the prosecutor's questioning, without objection, one of the defendants concerning certain aspects of those beliefs. [219-220]

In the circumstances, delay after trial in providing a criminal defendant with transcripts of the proceedings and in appointing counsel for the purpose of appeal did not require the dismissal of the indictments against him. [220-221]

---

[1] Two against Lee and three against Lawrence Shaw.

INDICTMENTS found and returned in the Superior Court Department on January 16, 1980.

The cases were tried before *John P. Forte*, J., sitting under statutory authority.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Geraldine S. Hines* for Leslie Lee.

*Carol A. Donovan* for Lawrence Shaw.

*Robert S. Sinsheimer,* Assistant District Attorney, for the Commonwealth.

O'CONNOR, J. The defendants were tried by a jury and convicted of armed robbery and assault and battery with a dangerous weapon in connection with the holdup of a convenience store in Brockton on November 5, 1979. At their arraignment on January 28, 1980, the defendants told the judge they did not want to be represented by counsel. Nevertheless, the judge appointed Mr. Thomas A. Hensley to represent the defendant Lee, and Mr. John Tara to represent the defendant Shaw. Although counsel had been appointed, the defendants represented themselves from that time until the jury had been selected at the trial in August, 1980, opening statements had been made, and the presentation of evidence was in its early stages. Early in the presentation of the Commonwealth's case, Mr. Hensley and Mr. Tara assumed the role of defense counsel, and they continued in that role until the trial was completed and the defendants were sentenced. The defendants appealed from their convictions, and we transferred the cases to this court on our own motion. The defendants now contend that they were denied their right to the effective assistance of counsel, and that they are entitled to a new trial on that ground. Shaw also alleges other errors, which we discuss below. We affirm the defendants' convictions.

We set forth the relevant pretrial proceedings occurring after the arraignment. At a hearing on May 7, 1980, at which Shaw was not present, Lee again indicated that he did not want counsel to represent him. The judge, who had also presided at the arraignment, inquired of Lee's attorney, Mr. Hensley, who stated that there were no personal differences between Lee and himself, but that Lee "continues to assert his rights pursuant to [*Faretta* v. *California,* 422 U.S. 806 (1975)] to

represent himself." The judge then asked Lee, "Is that what you want to do, represent yourself?" to which Lee responded, "Yes, sir, I would like to go pro se." The judge questioned Lee about his education and whether he understood the charges against him.[2] He instructed Mr. Hensley to stay in the case as "standby counsel," and to assist the defendant or to refrain from interfering as the defendant wished. He also asked Lee to sign a written waiver of counsel form, which Lee refused to do. At this hearing, Lee also filed a written "motion to stay pending habeas corpus and U.S. Supreme Court Petition for writ of

[2] THE JUDGE: "Are you trained in the law?"
LEE: "No, but I know my rights. Like I haven't been arrested."
THE JUDGE: "I know that is your contention, but are you trained in the law?"
"(The defendant nodded.)"
THE JUDGE: "Pardon?"
LEE: "Yes."
THE JUDGE: "Have you gone to school?"
LEE: "No, I haven't."
THE JUDGE: "What is the highest grade you have gone in school?"
LEE: "I've completed my GED diploma."
. . .
THE JUDGE: "You realize that you have a right to represent yourself, to go pro se, you know you have a right to do that, right?"
LEE: "Yes, sir."
THE JUDGE: "You know that when a man is not trained in the law and all he's got is that equivalency certificate you're talking about that a man is very foolish to represent himself in a court of law, because he's not trained. You know that too, don't you?"
LEE: "Yes, pro se —"
THE JUDGE: "Wait a minute. Now, you also know that these charges are — if you are not properly represented, you could be found guilty and go away for life; you understand that, don't you? That is how serious this is."
LEE: "I'm fully aware of that, your Honor."
THE JUDGE: "Okay. I just want to make sure."
LEE: "But —"
THE JUDGE: "Now, you don't know —"
LEE: "The issue is that —"
THE JUDGE: "Pardon?"
LEE: "The issue is that I have a habeas corpus filed in the United States Supreme Court."
THE JUDGE: "That's got nothing to do with this proceeding at all."
LEE: "I've got rights now."
THE JUDGE: "You've got all kinds of rights, and I'm going to protect every one of them. And the fact that you've got a habeas corpus filed in the federal court doesn't mean anything. This goes to show you."

prohibition," the thrust of which was that prosecution of the defendants would be impermissible because they had never been arrested.[3] The motion was filed in the names of both defendants, proceeding pro se.

At a hearing on May 12, 1980, before the same judge, the defendants filed a second pro se document entitled "Defendants' Statement to the Court and Right to Bar Counsel," which was treated as a motion to bar counsel. The motion cited *Faretta* v. *California, supra,* and *Chapman* v. *United States,* 553 F.2d 886 (5th Cir. 1977), which hold that a defendant has a constitutional right to proceed pro se. The motion further stated: "Defendants are *pro se* only for presenting this statement to the court," and reiterated the defendants' belief that they could not be prosecuted because they had not been arrested. The judge asked Shaw whether he wanted to proceed pro se. Shaw responded that he did, insisting that he could not be tried.[4] The judge then denied the motion to stay proceedings.

---

[3] At the time of the robbery, both defendants were serving earlier sentences and were residing at a prerelease center. After the robbery the defendants were transferred to the Massachusetts Correctional Institution, Walpole. This procedure apparently led the defendants to believe that they had not been arrested and therefore could not be tried, an argument they pressed throughout the pretrial proceedings.

[4] THE JUDGE: "Have you had talks with him indicating that he doesn't want you to represent him?"

DEFENSE COUNSEL: "The last time I talked to him, he indicated that he did want me to represent him."

THE JUDGE: "And that was — recently?"

DEFENSE COUNSEL: "A month ago?"

SHAW: "No, I didn't say that."

THE JUDGE: "Okay. Now, you're saying you don't want it?"

SHAW: "I said it all along. I said I wanted to go pro se."

THE JUDGE: "You wanted to go pro se. Are you trained in the law?"

SHAW: "No. I'm a layman at law."

THE JUDGE: "Pardon?"

SHAW: "I'm a layman at law."

THE JUDGE: "You're a layman at law. And you realize you're charged with very serious criminal offenses?"

SHAW: "Yes, I am. I want to go pro se on the brief that I submitted."

THE JUDGE: "Okay. And you understand that you have a Constitutional Right to represent yourself pro se, that's what you're asking me to do?"

SHAW: "Pro se on the briefs. It says everything right in there."

He ordered Shaw's attorney, Mr. Tara, to remain in the case as "stand by" counsel, stating, "I think he may want Tara or may not."

---

THE JUDGE: "You want to try your case?"

SHAW: "No. I don't want to try my case. I want to stop prosecution. It's illegal prosecution. I've never been arrested."

. . .

THE JUDGE: "So, you are part of that motion, so I was wrong, you do have a motion."

SHAW: "Yes, sir."

. . .

THE JUDGE: "Do you want to be heard yourself on that, or do you want Mr. Tara to represent you on that. I'm going to just help you out by telling you that I'm going to allow you to try your case pro se if you want to — if you want to — otherwise, you're going to have Mr. Tara represent you. If you decide to represent yourself on the trial, I'm going to have Mr. Tara stand by to assist you if you want to use him. You may use him, you may not use him. It's entirely up to yourself, but as I understand what you're saying is that you want the lawyer to represent you at the trial but you want yourself to represent you on this motion."

SHAW: "On the Habeas Corpus. So, what we're doing, we're trying to stop prosecution because it's illegal prosecution, so it has to go to trial."

THE JUDGE: "I understand. So, you want to represent yourself on that."

LEE: "Sir, we're declining from the trial."

THE JUDGE: "Now, Mr. Shaw, you want me to hear you on this motion to stay the proceeding? Do you want me to hear you, or do you want the lawyer, John Tara, to look it over and advise you what to say, and what to do, or to argue himself? What do you want me to do on that motion now?"

SHAW: "I don't want any counsel to do anything for me. I'm declining from the trial. I don't want to be part of the trial."

THE JUDGE: "Do you want to be heard?"

SHAW: "It's an illegal prosecution. I'm victim of the Fruits of the Poison Tree Doctrine, an illegal prosecution, and we have nothing to say at the trial at all. We're trying to stop the trial."

THE JUDGE: "Okay. Have you got anything to say further on the motion? All right, the motion is denied and your rights are saved as to that. The case stands for trial. Mr. Tara will be standby counsel. Give the defendant the Waiver of Counsel Form which indicates that you want to trial by yourself. You don't want to go to trial by yourself?"

SHAW: "I'm not signing any forms. If this was California, I'd have the right not to have counsel."

THE JUDGE: "Yes. But do you want counsel for your trial?"

SHAW: "I don't want a trial. I deny trial."

THE JUDGE: "Okay. Well, you're going to go to trial —"

SHAW: "You can do whatever you want to do, but Title 18 of the Federal Laws says you're not above the law, so you do what you want to do. I just deny trial."

At a hearing on July 22, 1980, before a different judge, Mr. Hensley moved for permission to withdraw, stating that the defendants wanted to represent themselves. The judge asked Lee whether he intended to represent himself. Lee responded, "I'm going pro se on a habeas corpus." The judge made several attempts to find out whether Lee intended to represent himself at trial, but Lee refused to answer, insisting that the judge rule on another pro se motion he had filed. The judge denied that motion, and denied Mr. Hensley's motion to withdraw. Shaw then indicated that he was dissatisfied with Mr. Tara because he was a former assistant district attorney, and Shaw indicated for the first time that he wanted new counsel appointed to represent him at trial.[5]

The judge called a recess until Mr. Tara arrived. Both defendants then indicated they wanted counsel, but that they were not satisfied with the attorneys appointed to represent them because they were not prepared to try the case. The colloquy is set forth in the margin.[6] The judge stated he would hold ap-

THE JUDGE: "Okay. You're held for trial. You can represent yourself if you want to. Mr. Tara's going to stand by as standby counsel . . . ."

[5] The defendants argue that they had expressed dissatisfaction with appointed counsel as early as May 12. The motion which they filed on that day contained the following statement: "The extraordinary misconduct by lawyers whom this Court seeks to represent the Defendants, proves that they have been working in concert with the District Attorney against the liberty interest of the Defendants, and that they, being former Assistant District Attorneys have shown the Defendants that a conspiracy appears afoot." However, nothing in the motion suggested that the defendants wanted other counsel appointed. To the contrary, the motion cited cases which stand for the proposition that a defendant has the right to proceed without counsel.

[6] THE JUDGE: "Mr. Shaw, you are represented by Mr. Tara, standing in for you, is that correct?"

SHAW: "No, your Honor, I'm not represented by him. I would like counsel."

THE JUDGE: "He's been appointed as counsel for you."

SHAW: "He doesn't know anything about my case. He's never talked to me about my case. How can he try a case?"

THE JUDGE: "Well, Mr. Shaw, it's my understanding not only that Mr. Tara is appointed from the Clerk of Courts, they were appointed as counsel and you asked to proceed on your own part. They are remaining in to assist

pointed counsel in the case, but granted a two-week continuance to allow the attorneys time to prepare. The case was called for trial on August 5, 1980. Mr. Hensley stated that he had been informed by Lee that Lee did not want him to try the case, and that he did not feel he was authorized to speak on Lee's behalf. Mr. Tara also stated that he had been told by Shaw that Shaw did not want him as counsel. The judge asked both defendants who their attorneys would be. Lee responded that he did not need an attorney because he could not be tried. Shaw responded that Mr. Tara had been appointed but that Shaw did not want him. The judge ordered the case held for trial.

---

you in any advice that you want. Now, if you want counsel to represent you in the course of these proceedings you indicate now."

SHAW: "I just did."

THE JUDGE: "And I'll appoint counsel."

SHAW: "I want counsel, I don't want this counsel."

THE JUDGE: "Mr. Tara, you are appointed to represent this gentleman."

DEFENSE COUNSEL: "Judge, I should say for the record that I have conferred with Mr. Shaw on three separate occasions. I can give the Court the dates and times, and I am quite familiar with the case."

THE JUDGE: "I'm familiar with Mr. Tara's experience, and I know you have been around the defense bar for a long time."

SHAW: "He doesn't know anything about this case."

LEE: "Why did you tell that lie, Mr. Tara? You don't know nothing about this case."

THE JUDGE: "Mr. Lee, one more outburst from you, Mr. Lee, and I'll handle it severely. All right."

SHAW: "This man's never been up to talk to me."

THE JUDGE: "Mr. Lee, do you intend to proceed with or without counsel?"

LEE: I'll go the same as he's going, sir."

THE JUDGE: "What is that?"

LEE: "I want to give counsel more time to prepare the case."

THE JUDGE: "Mr. Hensley, having been appointed, I am going to have to hold you in this case as counsel."

DEFENSE COUNSEL: "If your Honor please, I have no alternative but to object. I am not wanted by my client, I don't particularly wish to be in the case. Quite frankly, I have never had an opportunity to discuss any potential affirmative defenses with him."

THE JUDGE: "I'll give you an opportunity. I'm just settling the issues of counsel. I'm not going to allow the defendants to come in here and to constantly change counsel. That is an interesting tactic, Mr. Lee and Mr. Shaw, but it's not going to be exercised. Mr. Hensley is appointed as your counsel, and you can discuss the matter with him. He is going to remain in as counsel, and Judge Dwyer's order regarding that aspect will stand."

On August 11, the case was called, and the judge asked whether the defendants were ready for trial. Both defendants insisted that they were not going to take part in the trial. Mr. Hensley and Mr. Tara then asked that their status be put in the record. They stated that the defendants did not want them to participate but that they would be available to assist and advise the defendants if they so desired. The defendants said nothing to contradict the lawyers' statements, and when the judge offered to seat the attorneys close to the defendants so they could help them, Shaw responded, "They're not going to [help]." The defendants' trial then commenced. The defendants represented themselves during the selection of the jury and the early portions of the trial, during which time they made several potentially damaging statements. Mr. Tara and Mr. Hensley eventually assumed the role of defense counsel.

1. A defendant has a right to the effective assistance of counsel, *Gideon* v. *Wainwright,* 372 U.S. 335 (1963), although he does not have a right to court appointed counsel of his choice. *Commonwealth* v. *Moran,* 388 Mass. 655, 659 (1983). A defendant also has a right to defend himself without the assistance of counsel, if he voluntarily and knowingly elects to do so. *Faretta* v. *California,* 422 U.S. 806, 818-821 (1975). *Commonwealth* v. *Jackson,* 376 Mass. 790, 794 (1978). The court must make available to an indigent defendant counsel with whom reasonable communication is possible, who is competent, completely loyal and, with the defendant's cooperation, prepared to defend him. *Commonwealth* v. *Moran,* 17 Mass. App. Ct. 200, 204 (1983). When counsel of that calibre is made available to a defendant, his refusal to accept such representation is a voluntary waiver of the right to counsel, *Commonwealth* v. *Appleby,* 389 Mass. 359, 366-367 (1983); *Maynard* v. *Meachum,* 545 F.2d 273, 278 (1st Cir. 1976), and the waiver is effective if the decision is made with "a sense of the magnitude of the undertaking and the 'disadvantages of self-representation' . . . .: an awareness that there are technical rules governing the conduct of a trial, and that presenting a defense is not a simple matter of telling one's story. . . . In addition, the accused should have a general appreciation of

the seriousness of the charge and of the penalties he may be exposed to before deciding to take a chance on his own skill" (citations omitted). *Maynard* v. *Meachum, supra* at 279.

The defendants claim that their request for a substitution of counsel was denied in the trial court without an adequate hearing as to their concerns. They also claim that they did not effectively waive their right to counsel. They argue that the waiver was not voluntary because they were forced to choose between disloyal, inadequately prepared counsel and self-representation, and that the waiver was not knowing because they did not possess a sufficient understanding of the significance of such a waiver. In support of these claims, the defendants rely in part on facts which are not shown by the record. Such facts cannot be found for the first time on appeal; they must be established in a trial court. A motion for a new trial, not filed in this case, would be an appropriate vehicle for that purpose. Thus, we consider whether on the facts which do appear in the record there was any error below.

We have held that when a defendant requests that new counsel be appointed, the judge should allow the defendant to state his reasons for wanting to discharge his attorney so that the judge's discretion can be exercised on an informed basis. *Commonwealth* v. *Moran,* 388 Mass. 655, 659 (1983). *Lamoureux* v. *Commonwealth,* 353 Mass. 556, 560 (1968). We have never insisted, however, that that hearing satisfy a particular formula. We have only required that the judge give a defendant an opportunity to make known his reasons for objecting to appointed counsel before the judge rules on the request. *Lamoureux* v. *Commonwealth, supra.* That requirement was met here. Throughout the pretrial proceedings and at trial the defendants were given ample opportunity to voice their concerns about appointed counsel, and they did so. Their expressed concerns were twofold: appointed counsel had a conflict of interest because counsel were former assistant district attorneys, and appointed counsel were unprepared.

The defendants' claims that appointed counsel had a conflict of interest and were unprepared are not supported by the record. The record shows that counsel had previously served as assistant

district attorneys in the office of the district attorney for the Plymouth District, but that fact alone does not establish, nor even permit the inference, that counsel's loyalty to the defendants was impaired. Nor can we conclude, on the record before us, that appointed counsel were unprepared to defend their clients. While it is possible that counsel's information was limited by reason of lack of discovery during the period the defendants were insisting on representing themselves, or because of lack of communication from the defendants, such limitation, or its extent, has not been established. Mere allegations by the defendants are not enough. Therefore, the defendants have not demonstrated that the judge was in error in limiting their choice to representation by Mr. Hensley and Mr. Tara, or self-representation. To the extent that counsel lacked information due to the defendants' lack of cooperation, the defendants cannot justifiably complain in any event. See *Commonwealth* v. *Moran,* 17 Mass. App. Ct. 200, 206 (1983) ("The judge could have determined . . . that whatever difficulty there might have been in communication stemmed from the defendant's intransigence. The judge could have properly concluded that the defendant could not create his own communication gap by stubbornly refusing to talk to his lawyer"). We conclude, therefore, that the defendants voluntarily waived their right to counsel, and we proceed to the further question whether the defendants had sufficient understanding of the significance and possible consequences of that waiver for the waiver to be effective.

While it would be helpful to a reviewing court for the judge, at the time of a waiver of counsel, to inquire of a defendant on the record concerning the defendant's understanding of the waiver's implications, such an inquiry is not constitutionally required. *Maynard* v. *Meachum, supra* at 278. In order to show a right to reversal of his conviction, a defendant must establish that his waiver of counsel was ineffective because it was not intelligently made. The defendants' lack of understanding is not shown by the present record, which in fact suggests a contrary conclusion. The pretrial colloquys between the judge and the defendants on May 7 and May 12, 1980, together with

the judge's insistence that counsel remain available at all times on a standby basis, tend to show that the defendants had sufficient awareness of the relevant considerations to support the conclusion that their voluntary waiver of counsel was made with an understanding of its ramifications, and was, therefore, effective. The defendants' citation of decisions highly relevant to their contention that they were entitled to proceed pro se is some indication of their sophistication, and lends further support to that conclusion.

2. Having concluded that the defendants validly waived their right to counsel, we turn to the other issues raised by the defendant Shaw. At the trial, Shaw testified that on the date of the robbery he was with his girl friend and an individual named Johnson at a location removed from the scene of the robbery. On cross-examination, the judge permitted the prosecutor to inquire whether Shaw had "made any effort to get ahold of" Johnson or his girl friend. Shaw responded that he was incarcerated and without access to a telephone. Although the record is unclear, we assume that the defendant preserved his right to challenge on appeal the admission of that evidence. We reject Shaw's contention that the questions were improper. At the time the questions were asked, Shaw had been positively identified at trial as one of the men who had committed the robbery. The posture of the case was such that Shaw would be naturally expected to make an effort to obtain the testimony of his girl friend and Johnson to support his alibi. His failure to do so would tend to show that he knew their testimony would not be helpful. See *Commonwealth* v. *Niziolek,* 380 Mass. 513, 519 (1980). Shaw argues that the questions should not have been permitted because "the prosecutor and the court knew that the defendant had been physically unable to contact witnesses prior to trial." The asserted facts have not been established on the record. In any event, if Shaw's testimony implied that he had not made an effort to obtain the testimony of his girl friend and Johnson, it also explained his failure to do so.

3. Shaw argues that the judge erred in permitting the prosecution to question Lee on certain aspects of his religious beliefs.

Throughout the trial Shaw and Lee conspicuously manifested their Muslim beliefs. During cross-examination, over Shaw's objection, the prosecutor asked Lee whether he understood that he had an obligation to tell the truth. The judge allowed the question. The prosecutor then asked a series of questions about Lee's religious beliefs without objection by Shaw. Shaw contends that this was prosecutorial misconduct designed to "inject religious and racial prejudice into the jury's deliberations." However, the judge could have concluded that the questions were simply designed to determine the effect of Lee's religious beliefs on the oath he had taken as a witness. In any event, in the absence of objection at trial, the issue has not been preserved for review. Nor is there a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman,* 352 Mass. 556, 564 (1967).

4. Because Shaw failed to object at trial to the judge's jury instructions with respect to joint venture, and because there is no substantial risk of a miscarriage of justice, see *Freeman, supra,* we decline to consider that issue on appeal.

5. Finally, Shaw seeks dismissal of the indictments because of delay in providing him with transcripts of all the proceedings and in appointing counsel for the purpose of appeal. Despite his repeated requests, he did not receive a complete transcript of the proceedings until three years after the filing of his notice of appeal. Appellate counsel was not appointed until nineteen months after trial counsel was allowed to withdraw.

"The guaranty of a speedy trial set forth in the Sixth Amendment to the United States Constitution (and art. 11 of the Massachusetts Declaration of Rights) is not read as applying to the appellate process. See *Doescher* v. *Estelle,* 454 F. Supp. 943, 949-950 (N.D. Tex. 1978), and cases cited. Nevertheless, as we acknowledge in *Commonwealth* v. *Swenson,* 368 Mass. 268, 279-280 (1975), 'specific circumstances . . . such as deliberate blocking of appellate rights or inordinate and prejudicial delay without a defendant's consent, may rise to the level of constitutional error' (infringement of due process or, possibly, equal protection)." *Williams, petitioner,* 378 Mass. 623, 625 (1979). In *Williams,* we recognized that "under extreme

conditions" dismissal of charges might be an appropriate rem-edy. *Id.* at 628 & n.8. The failure to produce transcripts promptly in this case apparently was due to neglect of the court stenographer. However, while that neglect is attributable to the State, *id.* at 627, it is not conduct that can be characterized as a deliberate blocking of Shaw's appellate rights. There is no allegation of intentional or deliberate misconduct by the prosecutor. Also, in view of our conclusion that there was no reversible error, Shaw has not been prejudiced by the delay.

*Judgments affirmed.*