COMMONWEALTH *vs.* DAVID WEICHEL.

Norfolk.    March 8, 1988. — August 1, 1988.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Assault and Battery. Self-Defense. Evidence,* Cross-examination, State of mind. *Constitutional Law,* Speedy trial, Delay in appeal.

Evidence of a witness's prior bad act, proffered by the defendant at a criminal trial, was properly excluded where it had minimal tendency to prove the issue, a witness's bias, for which it was offered, and where otherwise the evidence would have improperly impeached the witness's character. [105-106]

At the trial of indictments for assault and battery on two correctional officers, the judge properly excluded evidence offered to show the defendant's alleged state of mind at the time of the assaults, where the evidence, including the proffered evidence, was insufficient to raise the issue of self-defense to which the defendant's state of mind would have been relevant. [106-108]

A criminal defendant, whose conviction was affirmed on appeal, did not show prejudice sufficient to require dismissal of the indictment on which his conviction was based, by reason of the approximately ten-year delay in the hearing of his appeal, for which neither he nor the prosecution was responsible. [108-110]

INDICTMENT found and returned in the Superior Court Department on February 14, 1977.

The case was tried before *John J. Irwin, Jr.,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Jonathan Shapiro* for the defendant.

*Stephanie Martin Glennon,* Assistant District Attorney, for the Commonwealth.

O'CONNOR, J.   On October 4, 1977, after a jury trial, the defendant was convicted of assault and battery on correctional officer David Budgell, and was acquitted of assault and battery on correctional officer Raymond Green. The charges resulted

from an incident that had occurred in the segregated unit known as Block 10 at the Massachusetts Correctional Institution at Walpole (M.C.I. Walpole). The defendant was immediately sentenced to M.C.I. Walpole for a term of not less than one year nor more than three years to be served from and after completion of a life sentence for murder in the second degree. The defendant had begun to serve the life sentence on January 21, 1976. He filed a timely notice of appeal and a motion for the appointment of new counsel on October 13, 1977. The case remained dormant until November, 1986, when new counsel was appointed and a transcript was ordered and filed. It appears, and for the purpose of this decision we assume, that the regrettable delay in perfecting the appeal is chargeable entirely to the courts and is in no way attributable to the defendant or the prosecution. We transferred the appeal to this court on our own motion, and we now affirm the conviction.

At the trial, the Commonwealth presented its case through M.C.I. Walpole Associate Deputy Superintendent Albert Carr, and correctional officers Green, Budgell, and Jeffrey Beaulier. The only defense witness was George Nassar, an M.C.I. Walpole prisoner. Based on the Commonwealth's evidence, the jury could have found the following facts. On January 2, 1977, the defendant was confined to Block 10. At the time of the incident, he was in a locked corridor outside several segregation cells including his own. Prison regulations allowed a single prisoner to exercise in the locked corridor outside his cell as long as all other cells opening onto the corridor were locked and no other prisoners were in or had access to the corridor.

According to the Commonwealth's evidence, at approximately 10:00 A.M. the defendant called for an officer from the guardhouse. Officers Green, Budgell, and Beaulier responded. Green and Budgell went into the corridor while Beaulier remained outside the corridor to observe. The defendant, holding a cardboard box, was standing in front of the door to another prisoner's cell. The defendant asked Budgell to unlock that cell so that he could hand the prisoner the box. Budgell refused to open the cell while the defendant was in the corridor. The defendant then said "give me the fucking keys" and hit Budgell

in the face with his fist. The defendant shoved Green against the wall, hit him twice, and hit Budgell twice more in the face.

The jury could have found on the basis of the Commonwealth's evidence that, when the defendant attacked Budgell and Green, Beaulier alerted other officers and entered the corridor. When he approached the defendant, the defendant retreated to the rear of the corridor with his hands raised. The defendant was returned to his cell.

The witness Nassar, called by the defendant, testified that, when Green and Budgell entered the corridor, he saw them run toward the defendant and he heard sounds of a scuffle. Also, just before the incident began, Nassar heard another inmate say, "Watch out, this is a setup."

On appeal, the defendant argues that the trial judge made two reversible errors: (1) he improperly restricted the defendant's cross-examination of Green, which was designed to demonstrate Green's bias against the defendant; and (2) he improperly excluded testimony concerning the tension between the prisoners and the officers in Block 10, and concerning what other prisoners had told the defendant before the incident concerning officers' assaults on prisoners in the block. The defendant argues that the evidence was relevant to his theory of self-defense. We discuss the two claims in order.

During his cross-examination of Green, defense counsel elicited testimony that, before January 2, 1977, there had been "confrontations" between Green and the defendant. Counsel then asked Green whether he had taken the defendant's watch on September 1, 1976. The prosecutor objected, and the judge sustained the objection. A defendant, of course, is entitled to a reasonable cross-examination of witnesses against him, but, consistent with that principle, the scope of cross-examination rests in the sound discretion of the trial judge. The burden of showing an abuse of that discretion, an abuse that must be shown on the trial record, rests on the party claiming it, in this case the defendant. *Commonwealth* v. *Underwood*, 358 Mass. 506, 513 (1970).

No abuse of discretion has been shown. That Green took the defendant's watch might tend to show that the defendant

held a grudge against Green, but it had minimal, if any, tendency to show the reverse, that is, that Green held a grudge against the defendant, and that, as a witness, he was biased against him, particularly with thirteen months having elapsed since the watch incident. Surely, with respect to bias, the proffered evidence would have added nothing significant to the evidence already admitted concerning the confrontations between Green and the defendant. On the other hand, the evidence, had it been admitted, might well have led the jury to discount Green's testimony, not on the ground of bias, but on the ground that the taking of the watch was a prior bad act that demonstrated Green's lack of character and consequent unreliability as a witness. Impeachment of a witness in that manner is improper. *Commonwealth* v. *Clifford*, 374 Mass. 293, 305 (1978). Thus, because the proffered evidence had little, if any, legitimate value, and invited misuse by the jury, the judge clearly did not abuse his discretion in excluding it.

We turn to the defendant's assertion that the judge erred in excluding evidence concerning the tension between the officers and the prisoners in Block 10, and concerning other prisoners' having informed the defendant of assaults on prisoners by officers. After the Commonwealth rested, the judge informed counsel that, after consulting with M.C.I. Walpole correctional officers, he had decided that prisoner witnesses would be handcuffed while testifying. A discussion followed with respect to what testimony defense counsel expected the prisoner witnesses to give, and what relevance defense counsel thought that testimony would have. The discussion was as follows: THE JUDGE: "What do you anticipate they will testify to?" DEFENSE COUNSEL: "I anticipate that their testimony will be that between the time period of December 3, 1976, when Mr. Weichel came into Block 10, and January 2, when this assault occurred, that they made certain statements to Mr. Weichel, all of which bear upon a state of mind at the time the assault took place." THE JUDGE: "Specifically what statements?" DEFENSE COUNSEL: "Statements in the form of their descriptions to him of the other incidents that had taken place in the block and what he could expect as conduct from the correctional officers and

what kind of position he would be placed in depending upon whether or not he did certain things, all of which I am going to ask to be admitted based on the fact that it establishes his state of mind at the time of the assault." THE JUDGE: "In other words, do you anticipate that they are going to testify that they told him to be careful of himself because guards —" DEFENSE COUNSEL: "Among other things, they told him of specific instances of prior assaults that took place on the block to themselves as well as to other inmates as well as other things that they witnessed." THE JUDGE: "I am not going to allow that." DEFENSE COUNSEL: "If your Honor please, it certainly appears to me to be relevant in that it bears directly on the defendant's state of mind and he is going to be raising the issue of self-defense." THE JUDGE: "Are you suggesting that if a person's state of mind is that he reasonably anticipates or not even reasonably anticipates but has been told that he should anticipate that somebody is apt to strike him that he should adopt the philosophy that the best defense is a good offense and therefore he can go ahead and assault somebody on the basis that he anticipates that he himself may be an assault victim by that person?" DEFENSE COUNSEL: "I am not suggesting it in quite that way. What I am suggesting is that he was apprised of certain information from these two inmates which would lead a reasonable prisoner to believe that under the circumstances that existed on January 2, 1977, he was more likely than not to be the victim of an assault and that he acted accordingly and that that was his state of mind." THE JUDGE: "And you want those people to testify to that?" DEFENSE COUNSEL: "To what they told him, yes, not for the truth of what they said but for the fact that they told him those things." THE JUDGE: "I am not going to allow them to testify to that and your exceptions will be saved on the record." DEFENSE COUNSEL: "Thank you, your Honor."

At no time did defense counsel suggest to the judge that, in addition to the evidence that already had been admitted and the expected "state of mind" evidence set forth above, there would be further evidence raising the issue of self-defense. Thus, the question for the judge was whether the evidence al-

ready admitted, together with the proffered state of mind evidence, would be sufficient to raise an issue of self-defense. If not, the state of mind evidence was irrelevant to any issue in the case. We are satisfied that the evidence that already had been introduced, combined with the proffered evidence, was insufficient to raise the issue of self-defense, and that, therefore, the proffered evidence was properly excluded.

The issue of self-defense is not raised in the absence of evidence either that (1) the alleged victim, by an overt act, threatened immediate harm to the defendant, or (2) the defendant reasonably believed that the alleged victim, by an overt act, was threatening immediate harm to him. See *Commonwealth* v. *Glass*, 401 Mass. 799, 808 (1988). There was no such evidence in this case, either admitted or proffered. There was no admitted or proffered evidence that either officer struck the defendant or took any overt action of an immediately threatening nature against him, or that the defendant reasonably thought that such action had been taken. Nassar's testimony that Green and Budgell ran toward the defendant and that Nassar heard sounds of a scuffle, augmented by the proffered evidence of preexisting tension on Block 10 and of prior assaults by officers on prisoners, falls short of the mark.

The defendant's final argument is that due process requires dismissal of the indictment on which his conviction was based because of the approximately ten-year delay in his appeal. On October 13, 1977, the defendant filed a claim of appeal and a motion for appointment of counsel. The defendant asserts, and we accept as true, that on March 6, May 5, and October 16, 1978, he wrote letters to the clerk of the Superior Court in Norfolk County, stating that no action had been taken on his motion for the appointment of counsel, and that, without the aid of counsel, he had been trying to obtain a trial transcript. We also accept the defendant's assertion that, in response to his petition to this court seeking a trial transcript, the clerk of this court for Suffolk County sent the defendant a letter dated July 9, 1979, informing him that "in the near future" he would hear from the Norfolk Superior Court concerning action on his motions. In August, 1980, Weichel was transferred to a Federal

prison and he remained in that and other Federal prisons until January, 1984. Following the aforementioned letters, no action by the court on the defendant's motions is shown on the docket until November, 1986, when counsel was appointed, preparation of a trial transcript was ordered, and a transcript was filed.

"The guaranty of a speedy trial set forth in the Sixth Amendment to the United States Constitution (and art. 11 of the Massachusetts Declaration of Rights) is not read as applying to the appellate process." *Commonwealth* v. *Lee*, 394 Mass. 209, 220 (1985), quoting *Williams, petitioner*, 378 Mass. 623, 625 (1979). However, we have recognized on several occasions that "deliberate blocking of appellate rights or inordinate and prejudicial delay . . . may rise to the level of constitutional error." *Commonwealth* v. *Swenson*, 368 Mass. 268, 279-280 (1975). See also *Commonwealth* v. *Thomas*, 400 Mass. 676, 684 (1987); *Commonwealth* v. *Lee*, *supra* at 220-221; *Williams, petitioner*, *supra* at 625. Therefore, we must consider in this instance whether the conditions for constitutional error have been met.

We conclude that those conditions have not been met. There is no indication that the prosecution was in any way responsible for the delay. There is no contention that the defendant's appellate rights were deliberately blocked. Thus, to prevail on his constitutional due process argument, the defendant must show that the delay, which was clearly inordinate, was significantly prejudicial. He fails in this regard. Nothing suggests that the defendant's ability to present his arguments on appeal was adversely affected by the passage of time. Furthermore, since the defendant has demonstrated no error at trial, there will not be a retrial, and therefore we are not confronted with the possibility that witness unavailability or memory failure resulting from delay attributable to the Commonwealth will result in an unfair impairment of the defendant's ability to retry his case. Furthermore, since the conviction was lawful, we need not be concerned that, as a result of his sentence's running from and after his life sentence, the defendant was ineligible for minimum or prerelease security placement. There was no injustice to the defendant.

We recognized in *Williams, petitioner, supra* at 626, that "delay may entail anxiety, forfeiture of opportunity, and damage to reputation." The defendant asserts that he suffered anxiety as a result of not knowing for more than ten years what the outcome of his appeal would be. The short answer to the defendant's claim is that the record does not establish such anxiety. In any event, given the fact that the defendant continues to serve his life sentence for murder, it is highly unlikely that he could establish anxiety about his appeal to the extent necessary to qualify as prejudice sufficient to require dismissal of the indictment on constitutional grounds.

*Judgment affirmed.*