Flatley, J.
This is an appeal by plaintiffs Marguerite Seeley (“Mrs. Seeley”), an employee of the defendant, and her husband, George Seeley, from the trial court’s allowance of a motion to dismiss filed by defendant Prime Computer, Inc. (“Prime”).
Mrs. Seeley was hired by Prime as a sales accounting clerk on or about August 11, 1980, and remained employed until 1988, by which time she had received favorable evaluations, merit raises and a promotion to Accounting Specialist On March 25, 1988, Mrs. Seeley was the subject of an employee disciplinary procedure which resulted in a written “Initial Performance Warning” by her supervisor and her placement on probation for ninety (90) days. Neither information as to the nature of the allegations upon which thewarningwas based,northewarning itself, is partofthe record before us.
Mrs. Seeley claimed to have suffered severe emotional trauma as a result of the warning, and requested a disability leave. She submitted a letter from her doctor dated March 28,1988 indicating that she was disabled. Her doctor also completed a form of Prime’s entitled “Medical Salary Continuation Form” on April 1, 1988. Further, Mrs. Seeley was seen by a psychologist designated by Prime who reported to Prime on April 21,1988 that Mrs. Seeley was disabled.
Mrs. Seeley received short-term disability benefits consisting of 100% of her salary from March 28,1988 to July 25,1988.
On June 28,1988, Prime’s nurse indicated that a new Medical Salary Continuation Form was required. Mrs. Seeley provided it
On July 15,1988, however, Mrs. Seeley’s supervisor advised her that her medical update was not acceptable and that her disability pay was being terminated as of that *133 date, July 15,1988.
Mrs. Seeley objected and offered to provide additional documentation. Prime later required her to submit to further examination by its psychologist. Finally, on November 1,1988, Prime agreed that Mrs. Seeley should have had disability benefits for the period of July 25,1988 through August 11,1988 and sent her a check.
Prime then ordered Mrs. Seeley to return to work, but she refused to return to the same job (the record is devoid of information as to the work environment). By letter of November 14, 1988, Prime terminated Mrs. Seeley’s employment, effective November 10,1988.
Mr. and Mrs. Seeley instituted this action on March 20,1989. The complaint sets forth the following six counts: 1. breach of contract; 2. wrongful termination in breach of the implied covenant of good faith and fair dealing; 3. intentional infliction of emotional distress; 4. negligent infliction of emotional distress; 5. negligent hiring, retention and/or supervision; and 6. loss of consortium.
Prime filed a motion to dismiss all counts of the complaint under Dist./Mun. Cts. R. Civ. P., Rule 12 (b) (6) on the ground that the complaint failed to state claims upon which relief could be granted.
Prime filed an affidavit of Lawrence M. Bernstein, its Tice President for Human Resources, which included two exhibits: (a) the Prime Employee Handbook dated January 1986; and (b) extracts from Prime’s United States Human Resources Policies and Procedures Manual. Prime’s motion to dismiss requested, pursuant to Dist./ Mun. Cts. R. Civ. P., Rule 12(b), that the court treat defendant’s motion as one for summary judgment as to Count I only if it considered the material in the affidavit
The Seeleys did not file any opposing affidavits under Dist/Mun. Cts. R. Civ. P., Rule 56(c) or (f).
The Seeleys moved to amend two paragraphs of Count IV of their complaint, which alleged negligent infliction of emotional distress. This amendment was allowed. As amended, Count IV alleged that Mrs. Seeley suffered physical injury, including weight loss, weakness, loss of memory and physical function, and that Prime’s actions and omissions were the proximate cause of such injuries.
After hearing, the court granted the defendant’s motion as to all six counts of the plaintiff’s complaint, as amended. Having considered the material submitted by affidavit, the court treated defendant’s motion as one for summary judgment as to Count I.
This Division will treat each of the counts separately.
1. BREACHOFCONTRACT. Wenoteattheoutsetthatthecourt’sdecisiontotreat the defendant’s Rule 12 (b) (6) motion as to Count I as a Dist./Mun. Cts. R. Civ. P., Rule 56 motion for summary judgment was proper. The motion was accompanied by both an affidavit and the Employee Handbook upon which Mrs. Seeley was relying, and such materials were considered by the court in disposing of the defendant’s motion. Dist./Mun. Cts. R. Civ. P., Rule 12(b). See also, Davidson v. Commonwealth, 8 Mass. App. Ct. 541, 542, n.2 (1979).
Count I of the plaintiffs’ complaint (which was neither verified, nor supplemented by affidavit) for breach of contract alleges that Mrs. Seeley had a contract of employment with Prime which included, in its terms and conditions, both short and long-term disability benefits as set forth in Prime’s Employees Handbook and the right to certain disciplinary procedures established by Prime.
In support of the latter contention, the complaint merely alleges that Mrs. Seeley was made aware of certain disciplinary policies and procedures. It is not clear how she was so advised, and the plaintiffs have advanced no specific evidence in opposition to the defendant’s Rule 56 motion to demonstrate that disciplinary procedural rights formed part of any express or implied contract with Prime. See, as to opposing party’s Rule 56 burden, Madsen v. Erwin, 395 Mass. 715, 721 (1985). The affidavit of Rime’s Vice President attests that Prime’s disciplinary procedures are set forth in its Policies *134 and Procedures Manual, and that such Manual is distributed only to Prime supervisors and managers, not to all employees. There is indeed nothing in the record to suggest that the Manual was ever shown to, or examined by, Mrs. Seeley.
With respect to benefits, the complaint alleges that Mrs. Seeley was apprised of certain short and long-term disability benefits upon being hired, and that she was provided “from time to time” with Prime’s Employee Handbook and updates thereof. Mrs. Seeley claims that the Handbook “entitled” her, as an employee with more than five years of service, to short term benefits of 100% of salary for up to 25 weeks; entitled all employees to long-term disability payments of 60% of salary until age 65 or recovery; and that Prime’s termination of her disability benefits constituted an actionable breach of contract
It is established that an implied contract of employment can be shown to exist from the circumstances of a case. The initial issue posed by Count I of the complaint is whether the Employee Handbook formed the basis of a contract of employment between the parties, or alternatively, whether Mrs. Seeley was simply an employee at will. See Jackson v. ABCD, 403 Mass. 8 (1988).
The Employee Handbook upon which Mrs. Seeley relies contains a disclaimer on page one which clearly states that the Handbook cannot be construed as a contract between Prime and its employees; that the policies and procedures set forth do not constitute conditions of employment; and that Prime reserved the right unilaterally to “modify, revoke, suspend, terminate or change any or all such plans, policies or procedures in whole or in part at any time without notice."
It has been held that where the employer retains the right to modify unilaterally the terms of an employee manual, even though the employer follows procedures contained in the manual, the manual is not an employment contract. Jackson v. ABCD, 403 Mass. 8 (1988). In Mrs. Seeley’s case, her allegations are that Prime had policies and procedures that were made known to her at the time of hire and updated. This is, under Jackson, insufficient to render the Employee Handbook, with its explicit disclaimer, a contract of employment As the Handbook could not be construed as an “offer” which Mrs. Seeley could turn into an “acceptance” by her reliance on it, the trial court was warranted in finding her to be an at will rather than a contract employee.
However, there remains on the state of the record before this Division a further unresolved factual issue; namely, whether the existence of an implied contract can be found from the actions of the employer in “offering” or granting disability benefits to Mrs. Seeley and from her acceptance of those benefits. If such a contract were found to exist, the court will then be required to determine whether Prime or Mrs. Seeley was in breach of such a contract. The creation of an implied contract and any breach of the same are issues of fact for trial court resolution. As such genuine issues of material fact remain, the defendant’s motion for summary judgment as to Count I should have been denied.
2. WRON GFULTERMINATION/BREACH OFIMPLIED COVENANTOFGOOD FAITH AND FAIR DEALING. Count II of the plaintiffs’ complaint alleges that Prime breached its implied covenant of good faith and fair dealing by arbitrarily and capriciously terminating Mrs. Seeley’s disability benefits on July 15,1988 without cause and without a hearing, and by terminating her employment on November 10, 1988.
Covenants of good faith and fair dealing in employment situations have been recognized, although narrowly applied, by Massachusetts courts. See, generally, Maddalone v. Western Mass. Bus Lines, Inc., 386 Mass. 877 (1982); Fortune v. National Cash Register Co., 373 Mass. 86 (1977). Compare Cort v. Bristol-Meyers Co., 385 Mass. 300 (1981). Enforceable claims for bad faith termination of at-will employment contracts have customarily entailed discharges which were either designed to benefit the defendant at the plaintiff’s expense, or contrary to public policy. Siles v. Travenol Laboratories, Inc., 13 Mass. App. Ct 354, 358 (1982).
*135 In reviewing the court’s dismissal of Counts II through VI, we remain cognizant of the liberal Dist./Mun. Cts. R. Civ. P., Rule 12(b)(6) standard by which the legal sufficiency of a complaint is assessed. Gennari v. City of Revere, 23 Mass. App. Ct 979 (1987). Accepting as true the allegations of Count II and drawing all inferences in the plaintiffs’favor, McCone v. New England T & T, 393 Mass. 231, 232 (1984), itis not clear beyond a doubt that Mrs. Seeley can prove no facts in support of her claim which would entitle her to relief. Spence v. Boston Edison Co., 390 Mass. 604 (1983). The motion to dismiss as to Count II should, therefore, have been dénied.[2]
3. INTENTIONAL INFLICTION OFEMOTIONALDISTRESS. In Count III of the complaint, Mrs. Seeley alleges a claim for the intentional infliction of emotional distress arising out of her employment
In Foley v. Polaroid Corp., 381 Mass. 545 (1980) and again in Kelly’s Case, 394 Mass. 684 (1985), the Supreme Judicial Court had held that emotional distress arising out of employmentwas apersonal injury within the meaning of the Worker’s Compensation Statute, G.Lc.152.
The Legislature subsequently amended the Statute to provide:
No mental or emotional disability arising principally out of a bona fide, personnel action including a transfer, promotion, demotion or termination except such action which is the intentional infliction of emotional harm shall be deemed to be a personal injury within the meaning of this chapter.
G.Lc. 152, §1(7)A, as amended by St 1985, c. 572, §68. Mrs. Seeley’s claim for intentional infliction of emotional distress falls under this definition of personal injury arising out of employment and is compensable, if at all, under the Worker’s Con* pensation Statute. Hence, she is barred from bringing a common law claim by G.Lc. 152, §24 wherein an employee waives the right to sue at law for work related injury. Anzalone v. Massachusetts Bay Transp. Auth., 403 Mass. 110, (1980); Foley v. Polaroid Corp., supra at 715.
The trial court properly dismissed Count III.
4. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS. Count IV of the complaint states an actionable claim for negligent infliction of emotional distress.
The amendment to the Worker’s Compensation Statute cited above expressly limits recovery under the Statute for emotional distress arising out of a personnel action to the intentional infliction of such distress. In so restricting statutory recovery for emotional distress to the more egregious sort caused by intentional acts, it is clear' that the Legislature barred an employee from recovery under G.Lc. 152, for claims of negligent infliction of emotional distress. It is not clear, however, that the Legislature intended to bar an employee from seeking judicial redress at common lawfor the same negligent acts as Prime contends on this appeal.
The Supreme Judicial Court has not yet ruled on this issue. Relying on Niemi v. Genrad, Inc., 29 Mass. App. Ct. 948 (1985), Prime argues that it is the injury and not' the cause which determines whether the employee is precluded from recourse to the courts. However, the 1985 amendment of the Worker’s Compensation Statute limiting recovery to emotional distress resulting from the employer’s intentional conduct appears to have shifted the focus away from the nature of the harm to the employee, and to have rendered the conduct of the employer determinative of preclusion under the Worker’s Compensation Statute. Had the Legislature intended' toextinguisharightofactionforallemployeeemotionaldistress,whetherintentionally or negligently inflicted, it could have done so by a further amendment of the waiver provisions of G.Lc. 152, §24, by a further defining of terms under §1 (7) A or by some *136 other express mechanism.
Accordingly, we hold the Legislature did not intend to extinguish the right to bring a common law complaint alleging negligent infliction of emotional distress arising out of employment
Having held that the remedy at law remains available to an employee, it is necessary to address the further issue of whether Mrs. Seeley’s complaint, as amended, states a cause of action sufficient to survive a motion to dismiss. Count IV, as amended, alleges that Mrs. Seeley suffered physical harm as well as emotional distress as a direct result of Prime’s negligent acts. Given the minimal hurdle to be surmounted byaplaintiffopposingaDist./Mun. Cts. R. Civ. P.,Rule 12(b) (6) motion, Bell v. Mazza, 394 Mass. 176, 184 (1985), it cannot be ruled on the basis of the pleadings alone that Mrs. Seeley cannot prove a set of facts warranting relief for the negligent infliction of emotional distress.
The defendant’s motion to dismiss should have been denied as to Count IV.
5. NEGLIGENT HIRING, RETENTION OR SUPERVISION OF EMPLOYEES. CountV alleges that Mrs. Seeley was harmed by Prime’s negligent hiring, retention or supervision of employees. While our courts have recognized the existence of such a tort, the cases have been limited to instances where employees are hired to interact with the public, and the employer is charged with a duty of care in the selection of such persons for the protection of the public. Foster v. The Loft, Inc., 26 Mass. App. Ct. 289 (1988) (employee bartender with past criminal record, punched a customer. Held: employer liable on theory of negligent hiring for failure to screen and check criminal records).
Whether there are facts which could be adduced at trial which would support a finding of breach of the duty of due care owed to the public seems remote; nevertheless, the complaint sets out a claimfor which relief could be granted. See Jenkins v. Jenkins, 15 Mass. App. Ct. 934 (1983).
Consequently, CountV should not have been dismissed.
6. LOSS OF CONSORTIUM. Count VI alleges loss of consortium by plaintiff George Seeley, husband of plaintiff Marguerite Seeley.
Insofar as the claim is derivative of Mrs. Seeley’s claim for intentional infliction of emotional distress (Count III), the consortium claim is barred. By amending G.Lc. 152, §24, the Legislature overruled the holdings in Ferriter v. Daniel O’Connor’s Sons, 381 Mass. 507 (1980), which had first recognized common law consortium claims derivative of worker’s compensation claims. See Powell v. Cole-Hersee Co., 26 Mass. App. Ct. 532 (1988).
To the extent, however, that the consortium claims is derivative of Count I for breach of contract, Count II for wrongful termination, Count IV for negligent infliction of emotional distress, and Count V for negligent hiring, we hold that Count VI does state a cause of action which should not have been dismissed.
7. Accordingly, summary judgment for the defendant as to Count I is reversed and vacated. The judgment of dismissal as to Count III is affirmed. The judgment of dismissal as to Counts II, IV, V and VI is reversed and vacated.
8. Finally, although the issue has not been raised on the record before this Division, the trial court is directed to determine whether any of the claims now remaining in plaintiffs complaint relate to employee benefit plans and are thus preempted by federal law (“ERISA”), or relate solely to employee benefits and are not subject to preemption. See generally, 29 U.S.C. §1001, and §1144(a), §513(a); Massachusetts v. Morash, _ U.S _, 57 U.S.LW. 4429, reversing and remanding 401 Mass. 287 (1988).
The case is remanded to the trial court for further proceedings consistent with this opinion. So ordered.

 Although the issue has not beenbriefed by the parties, this Division notes that théEmployeé Handbook describes disability benefits as being available to an employee “When you are unable to report for work because of a non-work related personal injury or illness ... (emphasis supplied).”